401 S.E.2d 442

**Imogene WILLIAMS, Executrix of the Estate of Fred Brown Sayre, and Imogene Williams, Trustee under the Last Will and Testament of Fred Brown Sayre**

v.

**Larry L. SKEEN, Committee for Audrey Landfried Sayre, an incompetent, et al.**

No. 19602.

Supreme Court of Appeals of West Virginia.

Nov. 9, 1990.

Rehearing Denied Feb. 6, 1991.

Larry L. Skeen, pro se, and Skeen & Skeen, Ripley, for Larry L. Skeen, Committee for Audrey Landfried Sayre.

Robert W. Friend, Friend & Tallman, Parkersburg, for Imogene Williams, Executrix of the Estate of Fred Brown Sayre.

WORKMAN, Justice:

Larry L. Skeen, as Committee for Audrey Landfried Sayre, appeals from an order of the Circuit Court of Jackson County which granted summary judgment to Imogene Williams, the executrix of the estate of Mrs. Sayre's husband and the trustee of his will, and declared that the will renunciation which appellant had filed on behalf of his incompetent ward was invalid. We concur with the circuit court's conclusion that appellant's failure to have a court of competent jurisdiction confirm the renunciation rendered the renunciation invalid. We reverse the summary judgment ruling,

however, on the grounds that since the law on the correct procedure for having the renunciation approved was unclear, the statute of limitations was tolled by the timely recordation of the renunciation within the period established by W.Va.Code § 42–3–1 (1982) and accordingly, appellant is not barred from petitioning the circuit court to request ratification of the renunciation.

The will which is the subject of the renunciation was the testament of Fred Brown Sayre, who died on December 2, 1986. Due to a stroke which she suffered in 1979, the wife of Fred Sayre, Audrey Sayre, was completely paralyzed with the exception of her left arm. Since the stroke also robbed Mrs. Sayre of her ability to speak, the Jackson County Commission appointed the appellant, a nephew of the Sayres, as her committee following the presentment of Fred Sayre's will to probate. When Audrey Sayre died on January 6, 1989, Larry Skeen was also appointed as the executor of her will.

On January 20, 1987, appellant filed a renunciation of Mr. Sayre's will as the committee for Mrs. Sayre. Mr. Skeen contends that he determined that a renunciation was in the best interest of his ward after he reviewed the assets of Mr. Sayre's estate and determined that his aunt would benefit by approximately $250,000.00 if she would opt to inherit pursuant to forced intestate share as opposed to accepting the bequest which Mr. Sayre had provided for her[1] in his will. On the same date on which appellant filed the renunciation, the County Commission of Jackson County recorded the renunciation after determining that the document was presented for filing within the required eight month period after Mr. Sayre's will was admitted to probate.[2] *See* W.Va.Code § 42–3–1.

Sometime in 1988, the appellee, as executrix of Mr. Sayre's estate and trustee under his will, instituted a declaratory judgment action in the Circuit Court of Jackson County to determine her duties and rights with respect to Fred Sayre's last will and testament, as well as to obtain a declaratory judgment regarding the validity of the renunciation filed by the appellant. That action resulted in summary judgment being granted to the appellee on the issue of the will renunciation and it is from that judgment that this appeal arises.

■ The primary issue which this case presents is whether a committee, on behalf of its ward, has the absolute authority to renounce a will pursuant to W.Va.Code § 42–3–1 without seeking ratification from a court of competent jurisdiction. To resolve this issue of first impression, we first examine the relevant statutes pertaining to will renunciation and the powers which a committee has with respect to its ward. Renunciation of a will is expressly granted to a husband or wife by W.Va.Code § 42–3–1. That statute provides in its entirety

[w]hen any provision is made in a will for the surviving wife or husband of the testator, such surviving wife or husband may, within eight months from the time of the admission of the will to probate, renounce such provision. If the will be contested, or the order admitting it to probate be appealed from, such renunciation may be made within two months of the final decision on such contest or appeal. Such renunciation shall be made either in person before the county court by which the will is admitted to probate, or by a writing recorded in the office of the clerk of such court, upon such acknowledgement or proof as would authorize a deed to be admitted to record. If such renunciation be made, or if no provision be made for such surviving wife or husband, such surviving wife or husband shall have such share in the real and personal estate of the decedent as such surviving wife or husband would have taken if the decedent had died intestate leaving children; otherwise the surviving

---

1. By renouncing the will, Mrs. Sayre stood to receive a one-third share of her husband's real and personal estate. *See* W.Va.Code §§ 42–3–1 and 43–1–1 (1982).

2. The appellee entered the last will and testament of Fred Brown Sayre for probate in the office of the Jackson County Clerk on December 8, 1986.

wife or husband shall have no more of the decedent's estate than is given by the will.

*Id.*

Although W.Va.Code § 42–3–1 expressly grants the right to renounce a will to only a husband or wife, appellant argues that as the committee for an incompetent he had a duty pursuant to W.Va.Code § 27–11–4 (1986) to renounce Mr. Sayre's will, initially for the benefit of his ward and ultimately, her estate. West Virginia Code § 27–11–4 provides that

[t]he committee appointed for any such person unable to manage his business affairs shall take possession of his estate, and may sue or be sued in respect thereto, and for the recovery of debts due to and from such person. The committee shall preserve such estate and manage it to the best advantage, shall apply the personal estate, or so much thereof as may be necessary to the payment of the debts of such person, and the rents and profits of the residue of his estate, real and personal, and the residue of the personal estate, or so much as may be necessary, to the maintenance of such person, and of his family, if any, and shall make due accounting as required by law, and surrender the estate, or as much as he may be accountable for, to such person in case he shall be deemed competent, or in case of his death, without having been restored to competence, the real estate to his heirs or devisees, and the personal estate to his executors or administrators.

Appellant maintains that the statutory language which directs a committee to "preserve such estate and manage it to the best advantage" provided him with the requisite authority and obligation to renounce Mr. Sayre's will. *See id.*

While this Court does not question the duty of a committee to preserve, protect, and manage its ward's estate "to the best advantage," we conclude that this statutory obligation does not include an absolute right to renounce a will without seeking court approval. Our determination is consistent with the generally-accepted principle that

except where statutes, either expressly or by judicial construction, authorize the guardian, committee, conservator, or the like, of an incompetent surviving spouse or an infant to make an election on his or her behalf to take under or against the provisions of a will without obtaining judicial consent, approval, or authorization, the election ordinarily must be made either by a court of competent jurisdiction or by the guardian or the like acting pursuant to the authorization, consent, direction, or supervision of such court.

80 Am.Jur.2d *Wills* § 1614 (1975 & Supp. 1990) (footnote omitted); *accord* Annotation, *Who May Make Election for Incompetent to Take Under or Against Will*, 21 A.L.R.3d 320 (1968 & Supp.1990); *see First Nat'l Exch. Bank v. Hughson*, 194 Va. 736, 74 S.E.2d 797 (1953) (court, rather than committee for incompetent, must determine whether renunciation should be ordered).

In the factually distinct but analogous case of *State ex rel. Hartman v. Duffield*, 148 W.Va. 224, 134 S.E.2d 521 (1964), this Court adjudged that the committee of an incompetent who was entitled to disability retirement under Public Employees Retirement Act did not have authority to exercise a right of election regarding an annuity option that would have the effect of reducing benefits payable during the life of the incompetent. *Id.*, 148 W.Va. at 228–29, 134 S.E.2d at 523. Our decision in *Duffield* was reached by recognizing the general rule that "any election on behalf of a mentally incompetent person under guardianship ordinarily should be exercised or approved upon petition to a court of competent jurisdiction" in conjunction with a previous decision where the Court held that "a committee is not authorized to change the nature of an estate of an insane person without the direction or approval of a court having jurisdiction of the subject...." 148 W.Va. at 227, 134 S.E.2d at 523 (citations omitted). Although the issue of a committee's right to effect a will renunciation was not at issue in *Duffield*, that decision's import—that a court of competent jurisdiction must direct or approve certain acts

which a committee or guardian wishes to exercise that will effect the interests of an incompetent or insane person—does apply to and control the case *sub judice*.

The origin of judicial involvement in will renunciation cases is rooted in the fact that the right of a spouse to elect to renounce a will has been viewed historically as a personal right which cannot be exercised by another person on behalf of the spouse. *See Hughson*, 74 S.E.2d at 805 (quoting 1 American Law of Property, § 5.41 at 729); *see generally* 80 Am.Jur.2d, *supra*, at § 1613. Based on this tenet that the option to renounce a will was a personal and non-transferable right, a court of equity was required to approve any will renunciation proposed by a committee or guardian in the absence of contrary statutory authority. *Id.* The courts of equity acquired jurisdiction by virtue of the fact that "incompetent persons are wards of the court, and it is the duty of a court to protect them." *Duffield*, 148 W.Va. at 228, 134 S.E.2d at 523. Although the distinction between courts of equity and courts of law have long since been abolished,[3] it is this "high obligation owed by a court ... to protect, secure and enforce the right of an incompetent" which necessitates judicial scrutiny of a committee's desire to effect a will renunciation on behalf of its ward. *Hughson*, 74 S.E.2d at 805.

Persuasive authority on the issue of whether a court should make the final determination regarding the wisdom of a will renunciation proposed on behalf of an incompetent is presented by several statutes which suggest court approval of certain transactions that will affect the rights of an infant, insane person, or convict. The sale or encumbrance of the estate of an infant, insane person, or convict is addressed by W.Va.Code § 37–1–2 (1985) which provides that

[i]f the guardian of any minor, or the committee of any insane person or convict, think that the interest of the ward or insane person or convict will be promoted by a lease or by a mortgage or by a trust deed upon or by a sale of his estates, or of an estate in which he is interested with others, infants or adults; ... such guardian, committee, trustee, or beneficiary ... may, for the purpose of obtaining such sale, lease, mortgage or trust deed, file a bill in equity in the circuit court of the county in which the estate proposed to be leased, sold or encumbered by mortgage or trust deed or some part thereof may be, stating plainly all of the estate, real and personal, belonging to such infant or insane person or convict, or so held in trust, and all of the facts calculated to show the propriety of the sale, lease, mortgage, or trust deed....

*Id.* In addition to this provision, W.Va. Code § 37–1–11 (1985) authorizes a circuit court to consider by means of summary proceedings the petition of a guardian or committee seeking approval of the sale, lease, or mortgage of the estate of an infant, insane person, or convict. The standard for approval of such petitions is evidence that the requested transaction would benefit the interest of the infant, insane person, or convict. *See Jackson v. Jackson*, 89 W.Va. 571, 574, 109 S.E. 724, 725 (1921). When a compromise is reached in actions which affect the rights of infants and insane persons, judges are routinely asked to confirm the settlement pursuant to W.Va.Code § 56–10–4 (Supp.1990). That statute provides, in pertinent part,

[i]n any action or suit wherein an infant or insane person is a party, the court in which the same is pending, or the judge thereof in vacation, shall have the power to approve and confirm a compromise of the matters in controversy on behalf of such infant or insane person, if such compromise shall be deemed to be to the best interest of the infant or insane person. Such approval or confirmation shall never be granted except upon written application therefor by the guardian, committee, curator or next friend of the infant or insane person, setting forth under oath all the facts of the case and the reasons why such compromise is deemed to be for the best interest of the infant or insane person.

---

**3.** *See* W.Va.R.Civ.P. 2.

And the court or judge, before approving such compromise, shall, in order to determine whether to approve or disapprove the compromise, hear the testimony of witnesses relating to the subject matter of the compromise and cause said testimony to be reduced to writing and filed with the papers in the case. The court or judge, upon approving and confirming such compromise, shall enter judgment or decree accordingly.

*Id.*

Despite the fact that incompetents are not expressly included as a class of individuals to whom the protections of W.Va.Code §§ 37–1–2, 37–1–11, and 56–10–4 apply, the overriding concern of these statutes is to involve the judiciary in certain transactions which affect the interests of a ward or convict. This common concern of securing judicial confirmation that a particular course of action will benefit certain individuals in combination with the well-recognized principle that requires court-approval of renunciations affecting incompetents convinces us that a court of competent jurisdiction should ratify a will renunciation proposed by the committee of an incompetent to confirm that the renunciation will inure to the ward's benefit. *See* 80 Am.Jur.2d, *supra,* at § 1614; *see also Hughson,* 74 S.E.2d at 805–07 (court must ascertain best interests of surviving spouse when committee seeks to renounce will on behalf of incompetent).

Appellant relies upon the language of W.Va.Code § 7–1–3 (1980) to argue that the county commission rather than the circuit court has jurisdiction of the will renunciation issue. That statute provides that "[t]he county courts [county commissions] ... shall have jurisdiction in all matters of probate, the appointment and qualification of personal representatives, guardians, committees, curators, and the settlement of their accounts, ...." Through the exercise of reverse logic, appellant argues that because he can find no statute expressly granting original jurisdiction to a circuit court regarding a committee's authority to effect a will renunciation for an incompe-

tent, that original jurisdiction does not lie with the circuit court but rather with the county commission pursuant to the commission's general jurisdiction concerning matters of probate.

■ Absent statutes that grant equitable jurisdiction to probate courts or statutes expressly conferring jurisdiction of will renunciation cases to probate courts, the general rule provides that the "court having jurisdiction of the person or estate of the incompetent" is the court vested with jurisdiction to authorize a will renunciation on behalf of an incompetent. 21 A.L.R.3d, *supra,* at 331. West Virginia probate courts are not statutorily authorized to approve a committee's renunciation of a will on behalf of its ward nor are they clothed with equitable jurisdiction. Conversely, the circuit courts are endowed with jurisdiction "to determine questions of title with respect [to any estate, right or interest therein]...." W.Va.Code § 51–2–2 (1981). Concurring with the general rule, we conclude that the circuit court, as the court with jurisdiction over the incompetent's estate, is the tribunal authorized to determine whether a renunciation should be ordered on behalf of an incompetent. *See* 80 Am.Jur.2d, *supra,* at § 1614.

■ Although the circuit court correctly reasoned that the will renunciation required court approval, the court erred in its determination that Mr. Skeen was time-barred from seeking the requisite approval. The provisions of W.Va.Code § 42–3–1 clearly require that a renunciation be made "within eight months from the time of the admission of the will to probate." In this case, Mr. Skeen, as the committee for Mrs. Sayre, complied with the procedural prerequisite for effecting a renunciation by filing a written renunciation with the county commission within the eight-month period established by statute. The circuit court reasoned that appellant's failure to have the will renunciation approved within that same eight-month period rendered the renunciation null and void. We do not concur in this conclusion because the statute only requires that the renunciation be made

within the eight-month period. The renunciation was clearly made within the statutory period; confirmation by a circuit court, however, did not occur within that same period. Since appellant timely filed the renunciation within the statutory period and because the law on the correct procedure for having the renunciation approved was unclear, he is not barred from petitioning the circuit court to request ratification of the will renunciation at this time. Until such time as the legislature chooses to address this issue, it would seem advisable that a petition seeking confirmation from the circuit court of a will renunciation on behalf of an incompetent be filed within the statutory eight-month period commenced by the admission of the subject will to probate. Should the actual confirmation not take place until after the expiration of the statutory period, we would not view the delay as fatal provided that the petition had been filed with the circuit court within the requisite period.

We make no determination regarding the underlying issue of whether the will renunciation was indeed in the best interests of Mrs. Sayre or her estate. This is a finding which the circuit court must make upon proper petition. We do note that while appellant maintains that a renunciation was necessary to accumulate sufficient funds to pay for Mrs. Sayre's medical expenses, appellee suggests that Mrs. Sayre's estate had sufficient liquid assets to provide for such costs. We also recognize that given the intervening death of Mrs. Sayre the court's inquiry regarding the advantage of a renunciation may be somewhat simplified as the concern for sufficient funds has been rendered moot. That is not to suggest, however, that the court should not inquire into the related issue of whether the renunciation was prompted by the desire to benefit an individual other than Mrs. Sayre.[4]

 Finally, we do not imply through this opinion that a committee must seek judicial approval of every transaction which it seeks to enact on behalf of an incompetent, only those transactions which require or suggest approval by statute such as a real estate sale or where the need for court approval is required by the principle of *stare decisis* as in all subsequent situations when a committee for an incompetent seeks to effect a will renunciation on behalf of its ward. *See* W.Va.Code §§ 37–1–2, –11, and 56–10–4. A committee has no legal obligation to seek court approval for any act or transaction clearly in his ward's best interest that does not come within the above exceptions.

Based on the foregoing, we hereby affirm the order of the Circuit Court of Jackson County in part and reverse the same, in part.

Affirmed in part; Reversed in part.

---

4. Under the residuary clause of Mr. Sayre's will, the appellant's mother or her descendants, *per stirpes*, were to inherit the remainder of the estate following all the enumerated bequeathals.

Appellee suggests that this fact warrants an inquiry by the circuit court into the appearance of Mr. Skeen's personal interest in the renunciation.