407 S.E.2d 706

James ARNOLD and Rebecca Paugh, Personal Representatives of the Estate of Jack Turek, Deceased; Charles Arnold and Paula Arnold, Guardians of Heidi Turek, an Infant/Incompetent; and Robert Patrick Arnold, Committee for Frances Arnold (Turek), Petitioners,

v.

Heidi L. TUREK, an Infant/Incompetent; and Frances V. Turek, a Person Unable to Manage her Business Affairs; Diane Potter and Rosalie Darby; said Persons being the Heirs at Law of Jack Turek, Respondents.

No. 19856.

Supreme Court of Appeals of West Virginia.

Submitted May 14, 1991.

Decided July 3, 1991.

John W. Cooper, Cooper & Preston, Parsons, for petitioners.

Pat A. Nichols, Parsons, for respondent Heidi L. Turek.

Matthew H. Fair, Elkins, for respondent Frances V. Turek.

MILLER, Chief Justice:

This case involves two certified questions. The first question relates to the distribution of proceeds from the settlement of a wrongful death action. The second question involves whether monies obtained by two beneficiaries who are mentally impaired may be placed in a joint trust to be used for their benefit.

The relevant facts found by the circuit court are that on April 10, 1989, Jack Vic-

tor Turek was killed in Davis, Tucker County, when he was struck by a dump truck owned by Fairfax Sand and Crushed Stone. He had no will and was survived by Frances V. Turek, his widow, and Heidi L. Turek, their minor daughter, with whom he resided. The decedent also had two adult daughters with whom he had little contact by a former marriage.

Frances Turek is moderately impaired intellectually and is not employed, although she may be able to obtain gainful employment with some specialized training and vocational counseling. She was deemed by the court competent to make a will, but sufficiently mentally handicapped not to be able to manage her financial affairs. Her brother, Robert Patrick Arnold, has been appointed committee to manage her business affairs. Because of her medical problems, it is anticipated that she may have substantial future medical expenses.

Heidi Turek was sixteen years old at the time of her father's death. She is severely and permanently mentally retarded. The circuit court found that the nature of her mental disabilities will require extraordinary expenditures in the future, including psychological counseling, placement in a group home and/or developmental training center, special education, and vocational training. In addition, she suffers from visual and dental problems which will likely require medical expenditures in the future. Her guardians are her aunt and uncle, Paula and Charles Arnold.

James Arnold and Rebecca Paugh were appointed as the personal representatives of the estate of the decedent. They negotiated a settlement of the wrongful death claim in the amount of $400,000. They also entered into a written agreement with Mr. Turek's two adult daughters in which each agreed to accept the sum of $41,000 in settlement of her wrongful death claim, subject to the court's approval.

After obtaining the approval of Frances Turek's committee and Heidi Turek's guardians, the personal representatives of the estate petitioned the Circuit Court of Tucker County for ratification of the agreed upon arrangement and for distribution of the funds remaining after deduction of costs and attorney's fees. The circuit court approved the settlements and the attorney's fees and costs. The court ordered the remaining $248,000 placed in a joint trust with a spendthrift clause for the benefit of both Frances Turek and Heidi Turek. The circuit court then certified to this Court the questions discussed below.

I.

## DISTRIBUTION OF WRONGFUL DEATH PROCEEDS

■ The first certified question asks whether, pursuant to W.Va.Code, 55–7–6 (1989), and W.Va.Code, 55–7–7 (1989), a court may deduct damages awarded for loss of income or of the services, protection, care, and assistance provided by the decedent from the amount of the settlement before distributing the proceeds to those entitled to recover for the wrongful death.[1]

W.Va.Code, 55–7–6(b) and (c) (1989), set forth the amount and distribution of damages in a wrongful death action tried by a jury or by a judge sitting without a jury. W.Va.Code, 55–7–6(b), specifies that in the latter case, the court,

"after making provision for those expenditures, if any, specified in subdivision (2), subsection (c) [§ 55–7–6(c)(2)] of this section, shall direct that the remaining net damages be distributed in accordance with the decedent's will or, if there be no will, in accordance with the laws of descent and distribution as set forth in

---

1. The precise wording of the first certified question is:

"Whether the provisions of 55–7–6 and 55–7–7 are ambiguous, and, if so, whether they should be construed to permit a court to deduct and award damages to the actual persons suffering losses of income, services, protec- tion, care and assistance as a consequence of the decedent's death (as well as reasonable funeral, hospital and medical expenses incurred) before apportioning the remaining proceeds in accordance with the decedent's will or, if there be no will, in accordance with the laws of descent and distribution?"

chapter forty-two [§ 42–1–1 et seq.] of this code." [2]

W.Va.Code, 55–7–6(c)(1), lists the factors that may be considered in awarding damages in such actions, including sorrow, mental anguish, loss of solace, expected loss of income and of the services, protection, care, and assistance provided by the decedent, expenses for the care, treatment, and hospitalization of the decedent, and reasonable funeral bills.[3] W.Va.Code, 55–7–6(c)(2), requires the verdict to state separately the amount of damages awarded for "reasonable funeral, hospital, medical and said other expenses incurred as a result of the wrongful act, neglect or default of the defendant ... which resulted in death[.]" [4]

W.Va.Code, 55–7–7 (1989), makes similar provision where a claim for wrongful death is disposed of by compromise and settlement of the parties. The statute states, in relevant part:

"Upon approval of the compromise, the court shall apportion and distribute such damages, or the compromise agreed

upon, after making provisions for those expenditures, if any, specified in subdivision (2), subsection (c), section six [§ 55–7–6(c)(2) ] of this article, in the same manner as in the cases tried without a jury." [5]

It is undisputed that this provision and W.Va.Code, 55–7–6(b), anticipate that the expenses listed in W.Va.Code, 55–7–6(c)(1)(C) and (D), will be deducted from the total amount of the verdict or settlement before distribution of the net proceeds to those entitled to recover. The circuit court concluded, however, that an ambiguity existed as to whether the damages identified in W.Va.Code, 55–7–6(c)(1)(B), for loss of income and services of a decedent, should be treated in the same way and distributed to the appropriate beneficiaries. Stated another way, the question is whether those items of damages listed in W.Va.Code, 55–7–6(c)(1)(B), should be deducted from the total award or settlement and passed directly to those designated parties who suffered the loss or should be included in the net proceeds to be distributed in accord-

**2.** W.Va.Code, 55–7–6(b), provides:
"In every such action for wrongful death the jury, or in a case tried without a jury, the court, may award such damages as to it may seem fair and just, and, after making provision for those expenditures, if any, specified in subdivision (2), subsection (c) [§ 55–7–6(c)(2) ] of this section, shall direct that the remaining net damages be distributed in accordance with the decedent's will or, if there be no will, in accordance with the laws of descent and distribution as set forth in chapter forty-two [§ 42–1–1 et seq.] of this code."

**3.** W.Va.Code, 55–7–6(c)(1), provides:
"The verdict of the jury shall include, but may not be limited to, damages for the following: (A) Sorrow, mental anguish, and solace which may include society, companionship, comfort, guidance, kindly offices and advice of the decedent; (B) compensation for reasonably expected loss of (i) income of the decedent, and (ii) services, protection, care and assistance provided by the decedent; (C) expenses for the care, treatment and hospitalization of the decedent incident to the injury resulting in death; and (D) reasonable funeral expenses."

**4.** W.Va.Code, 55–7–6(c)(2), states:
"In its verdict the jury shall set forth separately the amount of damages, if any, awarded by it for reasonable funeral, hospital, medi-

cal and said other expenses incurred as a result of the wrongful act, neglect or default of the defendant or defendants which resulted in death, and any such amount recovered for such expenses shall be so expended by the personal representative."

**5.** The entire text of W.Va.Code, 55–7–7, is:
"The personal representative of the deceased may compromise any claim to damages arising under section five [§ 55–7–5] of this article before or after action brought. What is received by the personal representative under the compromise shall be treated as if recovered by him in an action under the section last mentioned. When the judge acts in vacation, he shall return all the papers in the case, and orders made therein, to the clerk's office of such court. The clerk shall file the papers in his office as soon as received, and forthwith enter the order in the order book on the law side of the court. Such orders, and all the proceedings in vacation, shall have the same force and effect as if made or had in term. Upon approval of the compromise, the court shall apportion and distribute such damages, or the compromise agreed upon, after making provisions for those expenditures, if any, specified in subdivision (2), subsection (c), section six [§ 55–7–6(c)(2) ] of this article, in the same manner as in the cases tried without a jury."

ance with the testator's will or by intestate succession.

■ The answer to this question lies in an analysis of the recent amendments to the Wrongful Death Act.[6] We have traditionally held that where a statute is amended to use different language, it is presumed that the legislature intended to change the law. We spoke to this concept in Syllabus Point 2 of *Butler v. Rutledge*, 174 W.Va. 752, 329 S.E.2d 118 (1985):

> " 'The Legislature must be presumed to know the language employed in former acts, and, if in a subsequent statute on the same subject it uses different language in the same connection, the court must presume that a change in the law was intended.' Syl. pt. 2, *Hall v. Baylous*, 109 W.Va. 1, 153 S.E. 293 (1930)."

This conclusion is particularly reinforced when we find that our interpretation of an earlier statute may have brought about the legislative revision. *See Gallardo v. Workers' Compensation Comm'r*, 179 W.Va. 756, 759–60 n. 5, 373 S.E.2d 177, 180–81 n. 5 (1988).

In *Walker v. Walker*, 177 W.Va. 35, 350 S.E.2d 547 (1986), we considered a previous version of our Wrongful Death Act. The issue was whether the circuit court was correct in distributing all of the proceeds of a wrongful death settlement to the eleven-year-old son of the decedent's third marriage. This distribution excluded the decedent's ten children by prior relationships. The circuit court found a very close relationship had existed between the decedent and the eleven-year-old son because the wife "had worked full time and the husband had cared for the child at home from the time he was born." 177 W.Va. at 37, 350 S.E.2d at 549. There was no question that the child was pecuniarily dependent on the father. The other children were adults and had only had a tenuous relationship with their father, who had apparently left them with their mothers when they were rather young.

The statutes in effect at the time, W.Va. Code, 55–7–6 (1982), and 55–7–7 (1982), permitted the proceeds of an award of damages or a settlement in a wrongful death action to be distributed in such amounts and proportions as the court deemed "fair, just and equitable."[7] We affirmed the

**6.** In *Bond v. City of Huntington*, 166 W.Va. 581, 584, 276 S.E.2d 539, 541 (1981), we made this statement in note 1:

> "While we use the phrase 'the State's Wrongful Death Act,' it consists of three statutes: *Code*, 55–7–5, which deals with the creation of the cause of action; W.Va.Code, 55–7–6, which relates mainly to the damages that are recoverable; and *Code*, 55–7–7, which centers on how such claim may be compromised."

**7.** W.Va.Code, 55–7–6(b) (1982), provided:

> "In every such action for wrongful death, the jury, or in a case tried without a jury, the court, may award such damages as to it may seem fair and just, and, after making provision for those expenditures, if any, specified in subdivision (2), subsection (c) [§ 55–7–6(c)(2) ] of this section, may direct in what proportion the remaining net damages shall be distributed to the surviving spouse and children, including adopted children, stepchildren and grandchildren of the deceased, and other persons, if any who were dependent upon the decedent for support, in whole or in part, or if there be none such, then to parents, brothers and sisters of the deceased, or if there be none such, then to such other persons, if any, entitled to inherit pursuant to the provisions of section one, article one, chapter

forty-two [§ 42–1–1] of this code, unless the jury shall by its verdict allocate the remaining net amount in differing amounts and proportions among any surviving spouse, children, adopted children, stepchildren, grandchildren, other dependents, parents, brothers and sisters of the deceased. Where the matter was tried without a jury the court may find upon just and equitable principles that such net amount recovered should be distributed to such last named persons in different amounts and proportions, in which event the court shall make written findings of fact and then and there order such remaining net damages distributed to those persons in such amounts and proportions as the court finds to be fair, just and equitable."

The 1985 amendments to the statute did not change this provision. *See* 1985 W.Va. Acts ch. 1.

The relevant portion of W.Va.Code, 55–7–7 (1982), provided:

> "Upon approval of the settlement, the court shall apportion and distribute such damages, or the settlement agreed upon, after making provisions of those expenditures, if any, specified in subdivision (2), subsection (c) [§ 55–7–6(c)(2) ], section six of this article, in the same manner as in the cases tried without a jury and make written findings of fact and then

court's settlement order, stating in the Syllabus of *Walker:*

"A trial court may consider the dependency of a decedent's children, the relationship between the decedent and his children, and the relative degree of each child's potential loss of money and services, in apportioning a wrongful death award under W.Va.Code § 55–7–6 (Supp.1986)." [8]

It was perhaps as a reaction to *Walker* that the legislature amended W.Va.Code, 55–7–6 and 55–7–7 in 1989. The amendments deleted provisions of W.Va.Code, 55–7–6(b) (1985), which specified relatives and dependents who were entitled to share in the damage award.[9] The legislature also removed the right of the jury or the court to distribute damages "in such amounts and proportions as the court finds to be fair, just and equitable." W.Va.Code, 55–7–6(b) (1985). Instead, the net proceeds of a damage award must now pass "in accordance with the decedent's will or, if there be no will, in accordance with the laws of descent and distribution." W.Va.Code, 55–7–6(b) (1989).

With regard to the distribution of a wrongful death settlement, W.Va.Code, 55–7–7 (1989), directs a judge to distribute the settlement in the same manner. Thus, the legislature has taken away the discretion of the court to allocate a greater share of wrongful death proceeds based on an individual's degree of dependency, relationship, or loss, which existed prior to the 1989 amendments to the Wrongful Death Act.

While W.Va.Code, 55–7–6(c)(1)(B) (1989), permits recovery of damages for loss of income and services, neither W.Va.Code, 55–7–6 (1989), nor W.Va.Code, 55–7–7 (1989), permits the judge or jury to allocate such damages to a particular beneficiary. Sums recovered for "reasonable funeral, hospital, medical and said other expenses"

are required to be "set forth separately," and "any such amount recovered for such expenses shall be so expended by the personal representative." W.Va.Code, 55–7–6(c)(2) (1989). All other damages recoverable under W.Va.Code, 55–7–6(c)(1) (1989), are "net damages" which are to be distributed in accordance with the decedent's will or by intestate distribution. No provision allows other elements of damages to be separated from the net proceeds or to be distributed to a specific beneficiary.

We do not believe the damages recoverable under W.Va.Code, 55–7–6(c)(1)(B) (1989), are "reasonable funeral, hospital, medical and said other expenses" as contemplated by W.Va.Code, 55–7–6(c)(2) (1989). The latter section clearly contemplates separate treatment of tangible damages in the nature of a debt or obligation incurred by the decedent as a result of the wrongful act or omission which led to his death, a viewpoint reinforced by the fact that such funds are to be distributed to the personal representative to be spent for such purposes. The damages recoverable under W.Va.Code, 55–7–6(c)(1)(C) and (D), are of this type.

Damages for loss of income and services are less tangible, however. They are not in the nature of expenses resulting from the wrongful act or omission which caused the death of the decedent. Nor would it make sense to require that any amounts recovered for loss of income or services "be so expended by the personal representative." W.Va.Code, 55–7–6(c)(2) (1989). The only logical conclusion is that while loss of income and services may be proved as an element of damages in a wrongful death action pursuant to W.Va.Code, 55–7–6(c)(1)(B) (1989), for purposes of distribution, such damages are "net damages" and should be distributed among all beneficiaries who take under the decedent's will or through intestate succession.[10]

9. For the text of W.Va.Code, 55–7–6(b) (1985), see note 7, *supra.*

10. Although not addressed in the certified question, it is equally clear that the damages recoverable under W.Va.Code, 55–7–6(c)(1)(A) (1989), for "[s]orrow, mental anguish, and solace which may include society, companionship, comfort,

and there order the remaining net damages distributed in such amounts and proportions as the court deems fair, just and equitable."

8. Because *Walker* involved a compromise and settlement of a wrongful death claim, the appropriate statutory reference in the Syllabus should have been to W.Va.Code, 55–7–7 (1982).

We conclude, therefore, that the circuit court's determination that there is an ambiguity in our Wrongful Death Act as to whether damages for loss of income or services pursuant to W.Va.Code, 55–7–6(c)(1)(B) (1989), can be distributed to the persons actually suffering such losses is erroneous. Sums recovered for such losses are "net damages" to be distributed in accordance with the decedent's will or pursuant to the statute of descent and distribution. Thus, the first certified question is answered in the negative.

■ We reach this conclusion based on our analysis of the 1989 amendments to the Wrongful Death Act. Below, both the parties and the court proceeded on the assumption that this was the statute to be applied in this case. We note, however, that these amendments were enacted on March 30, 1989, but did not become effective until ninety days from the date of passage.[11] As earlier stated, the decedent died on April 10, 1989. The petition for court approval of the settlement was not filed until November 14, 1990.

■ We have evolved several rules regarding whether a statute should be given retroactive effect. In Syllabus Point 2 of *State ex rel. Manchin v. Lively*, 170 W.Va. 672, 295 S.E.2d 912 (1982), we stated:

> " 'A statute is presumed to operate prospectively unless the intent that it shall operate retroactively is clearly expressed by its terms or is necessarily implied from the language of the statute.' Syllabus Point 3, *Shanholtz v. Monongahela Power Co.*, [165 W.Va. 305], 270 S.E.2d 178 (1980)."

There is no language in the 1989 amendments to the Wrongful Death Act that would suggest that the legislature intended to give them retroactive operation.

guidance, kindly offices and advice of the decedent," would also be included in net damages.

**11.** *See* 1989 W.Va. Acts ch. 1.

**12.** This conclusion rests, in part, on the definition of retroactivity as explained in Syllabus Point 3 of *Sizemore v. State Workmen's Compensation Commissioner*, 159 W.Va. 100, 219 S.E.2d 912 (1975):

We have been willing to accord some measure of retroactivity to new amendments working remedial changes to the Workers' Compensation Act. *See Lester v. State Workmen's Compensation Comm'r*, 161 W.Va. 299, 242 S.E.2d 443 (1978).[12] *See also Lester v. State Compensation Comm'r*, 123 W.Va. 516, 16 S.E.2d 920 (1941), *overruled on other grounds, Sizemore v. State Workmen's Compensation Comm'r*, 159 W.Va. 100, 219 S.E.2d 912 (1975). However, we do not view the amendments to the 1989 Wrongful Death Act to be mere remedial changes. They are, as previously noted, major changes with regard to the persons entitled to share in the wrongful death proceeds and their rights therein.

Most courts have concluded that statutory changes in the manner and method of distributing the proceeds of a judgment or settlement for wrongful death will not be given retroactive effect and that the statute in effect on the date of the decedent's death will control. *E.g., In Re Dance's Estates*, 16 Ill.App.2d 122, 147 N.E.2d 385 (1958); *Matter of Estate of Parsons*, 272 N.W.2d 16 (Iowa 1978); *Berg v. Berg's Adm'r*, 105 Ky. 80, 48 S.W. 432 (1898); *Richmond v. Chicago & W. M. Ry. Co.*, 87 Mich. 374, 49 N.W. 621 (1891); *Matter of Estate of Boyd*, 606 P.2d 1243 (Wyo.1980). *See generally* Annot., 66 A.L.R.2d 1444 (1959). The basic rationale for this rule is that the cause of action ordinarily accrues and the rights of the beneficiaries are vested on the date of the decedent's death. *See Hoover's Adm'x v. Chesapeake & O. Ry. Co.*, 46 W.Va. 268, 33 S.E. 224 (1899). Consequently, the rights and liabilities of the parties are controlled by the wrongful death statute in effect at the time of the decedent's death.

"A law is not retroactive merely because part of the factual situation to which it is applied occurred prior to its enactment; only when it operates upon transactions which have been completed or upon rights which have been acquired or upon obligations which have existed prior to its passage can it be considered to be retroactive in application."

Thus, we conclude that the 1989 amendments to the Wrongful Death Act are not applicable in this case. The parties' rights were vested on April 10, 1989, prior to the effective date of the amendments. The provisions controlling the distribution of the settlement here would be W.Va.Code, 55–7–6 (1985), and W.Va.Code, 55–7–7 (1982). As we have already noted, these statutes authorized a court to use its discretion and to distribute net damages in such amounts and proportions as the court deems to be fair, just and equitable.[13] Thus, in this case, the circuit court may make the distribution of the net damages in a fair, just, and equitable manner between the mother and the minor daughter.

## II.

### PLACEMENT OF WRONGFUL DEATH PROCEEDS IN JOINT TRUST

■ The second certified question concerns whether the circuit court had the authority to place the net proceeds of the settlement in the joint trust for the benefit of Frances Turek and Heidi Turek.[14] We do not believe that the trust arrangement devised by the court would be appropriate unless the parties, through their guardians and committee, specifically approved of it in writing. We find no such written approval in the record before this Court.

While there is not a great deal of authority on this point, it does appear that those who would benefit from a compromise of a wrongful death action may specifically agree in writing to allocate a compromise of the claim in a manner different from that mandated by statute. Such a written agreement is in the nature of a settlement and release of any further claims against the wrongful death defendant and the personal representative of the decedent's estate.

■ The issue most frequently arises where, after a beneficiary has compromised and settled his claims with the defendant, the personal representative, the only person authorized to bring a wrongful death action, initiates a lawsuit to recover damages. We discussed this question in *Carroll v. Fetty*, 121 W.Va. 215, 2 S.E.2d 521, *cert. denied*, 308 U.S. 571, 60 S.Ct. 85, 84 L.Ed. 479 (1939), where the father of a six-year-old child killed by an automobile signed a release in order to obtain surrender of the child's body. The father was later appointed administrator and brought suit for wrongful death, asserting that the release was void because it was procured by fraud and duress. We set out the relevant legal principles in Syllabus Points 1, 2, and 3 of *Carroll:*

"1. In an action for wrongful death, a release executed by the beneficiaries under the statute, Code, 55–7–5, prior to the institution of the action, is, in the absence of fraud, duress or other invalidating defects, a bar to recovery.

"2. A written release by one *sui juris* of a claim for wrongful death cannot be set aside for misrepresentations on the ground of fraud, in the absence of proof both clear and convincing. In such case, actual and positive fraud must be shown.

"3. In an action for wrongful death, a written release, signed by the beneficiaries entitled to recovery, may be set aside where it was obtained by duress exercised by a third party with the participation or knowledge of the releasee. However, such duress must be proved by clear and convincing evidence and gener-

**13.** The pertinent texts of both statutes are set out in note 7, *supra.*

**14.** This certified question was phrased as follows:

"Regardless of the answer to question 1, whether a circuit court has the inherent power to place the wrongful death proceeds owing to a spouse suffering a moderate mental impairment and owing to a child of the decedent who suffers from a severe mental impairment in a joint trust for the benefit of both, if such

trust contains a spendthrift provision to prevent it from being suddenly depleted or diminished by the claims of creditors who may render services to either of them and if such trust contains a further provision that at the death of the survivor of the beneficiaries, any undistributed portion of the trust will be distributed in accordance with the will of such decedent, or if she has no will, in accordance with the laws of descent and distribution?"

ally presents a question of fact for the jury."

Other jurisdictions have also recognized that the decision by all of the eligible beneficiaries to join in a compromise and release of their wrongful death claims will be binding, and the personal representative may not thereafter pursue the wrongful death claim. This rule is based not only on the law which encourages settlements,[15] but also in recognition of the fact that in a wrongful death claim, the personal representative is only acting as a trustee for those who are the designated beneficiaries under the wrongful death statutes.[16] *See, e.g., Kennedy v. Davis,* 171 Ala. 609, 55 So. 104 (1911); *Story v. Page,* 280 Mich. 34, 273 N.W. 384 (1937); *Sykora v. J. I. Case Threshing–Mach. Co.,* 59 Minn. 130, 60 N.W. 1008 (1894); *Spencer v. Bradley,* 351 S.W.2d 202 (Mo.1961); *Edwards v. Sullivan,* 200 Misc. 488, 102 N.Y.S.2d 951 (1950); *Patten v. Olson,* 265 N.W.2d 688 (N.D.1978); *Featherolf v. Casserly,* 144 N.E.2d 114 (Ohio App.1956); *McKeigue v. Chicago & N. W. Ry. Co.,* 130 Wis. 543, 110 N.W. 384 (1907). *See generally* Annot., 21 A.L.R. 4th 275 (1983).

■ Consequently, we conclude under the foregoing law that all of the eligible beneficiaries may, by a written agreement, compromise a wrongful death claim and allocate the share to be paid to each. Such a settlement agreement will be binding in the absence of fraud, duress, or other invalidating factors. Thus, as to the second certified question, we conclude that in the absence of a written consent by the parties to the express terms of the trust arrangements, the circuit court does not have the power to order the proceeds of the settlement placed in a joint trust.

In this case, the settlement agreement signed by the two adult daughters is valid, as found by the circuit court. What remains is for the circuit court to determine on remand if the committee for Frances Turek and the guardians for Heidi Turek are willing to concur in writing to the trust proposal set out by the court. If no written agreement can be obtained, the court should allocate the net proceeds as it deems fair, just, and equitable between the two parties under W.Va.Code, 55–7–7 (1982). The funds would be managed by the guardians and the committee and would be subject to the circuit court's supervision. W.Va.Code, 44–10–13 (1923). *Cf. Williams v. Skeen,* 184 W.Va. 509, 401 S.E.2d 442 (1990).[17]

The certified questions having been answered, this case is remanded.

Certified questions answered and dismissed.

NEELY, Justice, concurring:

I agree with the majority on the facts of this case, and I agree that the Legislature intended to change the way in which wrongful death proceeds are distributed. I have no problem with wrongful death victims who die intestate; however, I worry about wills, particularly when specific bequests are made, leaving a residuary beneficiary who was expected by the testator to

---

15. Our policy of encouraging settlements is summarized in Syllabus Point 2 of *State ex rel. Vapor Corp. v. Narick,* 173 W.Va. 770, 320 S.E.2d 345 (1984):

" 'The law favors and encourages the resolution of controversies by contracts of compromise and settlement rather than by litigation; and it is the policy of the law to uphold and enforce such contracts if they are fairly made and are not in contravention of some law or public policy.' Syllabus Point 1, *Sanders v. Roselawn Memorial Garden, Inc.,* 152 W.Va. 91, 159 S.E.2d 784 (1968)."

16. In *McClure v. McClure,* 184 W.Va. 649, 403 S.E.2d 197 (1991), we explained this concept in Syllabus Point 4:

"Under W.Va.Code, 55–7–6 (1985), our wrongful death statute, the personal representative has a fiduciary obligation to the beneficiaries of the deceased because the personal representative is merely a nominal party and any recovery passes to the beneficiaries designated in the wrongful death statute and not to the decedent's estate."

17. There is some suggestion that the guardians for Heidi Turek will have to be replaced by a committee under W.Va.Code, 27–11–1, *et seq.* We note, however, that guardians for the mentally retarded or mentally handicapped may be appointed pursuant to W.Va.Code, 44–10A–1, *et seq.* Under W.Va.Code, 44–10A–5 (1980), such guardians are subject to the provisions of W.Va. Code, 44–10–1, *et seq.*

inherit very little. Consequently, in subsequent cases I would vote to revisit this entire subject in a case where: (1) the wrongful death victim wrote a will predicated on a small estate; and, (2) it is obvious from the will's own provisions that had the wrongful death victim anticipated the wrongful death proceeds, he would have disposed of them differently.