431 S.E.2d 346

**Hilda KIDWELL, Appellant,**

v.

**Lyle KIDWELL, Executor of the Estate of Jay Kidwell, Appellee.**

No. 21351.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 26, 1993.

Rehearing Denied June 9, 1993.

Filed as Modified June 23, 1993.

Lary D. Garrett, Garrett & Garrett, Moorefield, for appellant.

Ralph W. Haines, Romney, for appellee.

PER CURIAM:

Hilda Kidwell seeks review of an order of the Circuit Court of Hampshire County which affirmed the findings of the Hampshire County Commission and the fiduciary commissioner, and held that certain real and personal property of which Mrs. Kidwell claimed an interest was properly in-

cluded in the estate of the decedent, Jay Kidwell.

## I

Hilda and Jay Kidwell were married in 1948. Mr. and Mrs. Kidwell resided on property owned by Mr. Kidwell prior to their marriage.[1] They were married for approximately forty-three years at the time of Mr. Kidwell's death in 1991.[2]

By his last will and testament, Mr. Kidwell devised and bequeathed to Mrs. Kidwell all of his "money, checking accounts, savings accounts, certificates of deposit, government bonds and car, absolutely."[3] He also created a life estate for Mrs. Kidwell in the house, yard and garden where they lived. Mr. Kidwell, however, gave the remainder of his estate, which represented his real estate, personal property, livestock and farm machinery, to his nephew, E. Lyle Kidwell.[4] E. Lyle Kidwell was also named executor under the will.

Mrs. Kidwell chose to renounce the will, and subsequently filed a claim against the estate for one-half of all of the tangible personal property appraised as belonging to her late husband's estate. She also claimed a one-half interest in the value of a barn which was constructed on the decedent's real estate during their marriage. Mrs. Kidwell asserted that she was entitled to this property because it was marital property acquired during the marriage, and that "the Court shall presume that all marital property is to be divided equally between the parties[.]"

A hearing before the fiduciary commissioner was held, and several witnesses, including Mrs. Kidwell, testified. Based on the evidence presented at the hearing, the

---

1. Mrs. Kidwell responded to the following questions regarding the ownership of their home:

    Q. Okay, now, at the time of your marriage, Jay already had the homeplace out there, didn't he?
    A. Yes.
    Q. He had gotten that from his family back in 1934? Is that right?
    A. Yes.

2. The circuit court found that, during their marriage, Mr. and Mrs. Kidwell lived apart from 1953 to 1965. Mrs. Kidwell testified, however,

that she moved back in with her husband in 1963.

3. The record reflects that there was $20,539.88 in the bank checking account and $344.29 in interest on the checking account. The United States Treasury Bond was valued at $2,621.83, and the car was valued at $3,400.00.

4. The farm machinery, cattle, livestock and guns were appraised at $30,910.00, and the real estate was appraised at $180,000.00.

fiduciary commissioner concluded that all personal property appraised in the estate of Mr. Kidwell "was his sole and independent property," and that Mrs. Kidwell was only entitled to the amount of personal property bequeathed to her under the will. He further concluded that Mrs. Kidwell was not entitled to any interest in the barn because it was constructed at a time when she was not living on the property, and was built on real estate owned by her husband prior to their marriage.

Mrs. Kidwell filed exceptions to the fiduciary commissioner's report with the county commission. The county commission, upon considering the exceptions, affirmed the fiduciary commissioner's report. Mrs. Kidwell filed a petition with the circuit court seeking a writ of error from the county commission's decision.

In affirming the findings of the fiduciary commissioner, the circuit court pointed out that the rules governing equitable distribution of marital property in divorce actions were not applicable in determining a decedent's interest in property to be included in an estate. The circuit court believed that Mrs. Kidwell's renouncement of the will was based on a misinterpretation of the law, and that she should have the option of rescinding her renunciation of the will if she desired to do so.[5] Mrs. Kidwell now seeks review of this order before this Court.

## II

At the outset, we would like to clarify that the provision for disposing of marital property set forth in *W.Va.Code*, 48–2–32 [1984] is to be applied in cases where there has been a judgment of annulment, divorce or separation. *W.Va.Code*, 48–2–32 [1984] specifically provides that *"upon every judgment of annulment, divorce or separation,* the court shall divide the marital property of the parties equally between the parties." (emphasis added) There is no language under *W.Va.Code*, 48–2–32 [1984] which would even suggest that this provision should be applied in cases where one spouse renounces the will of the other spouse.[6] Clearly, the statutory provisions set forth in *W.Va.Code*, 48–2–1 *et seq.* contemplate divorce, annulment and separate maintenance when a husband and wife dissolve their marriage, rather than the renunciation of a will by one spouse upon the other spouse's death.[7]

Mrs. Kidwell has asserted that the traditional practice of attributing ownership of all property to the husband was found by this Court to be inappropriate in *LaRue v. LaRue,* 172 W.Va. 158, 304 S.E.2d 312 (1983).[8] In *LaRue,* this Court,

---

5. The circuit court held that the property within the dwelling should be included in the decedent's estate and should be appraised as such. At the time of the hearing before the fiduciary commissioner, however, the property within the dwelling had not been appraised. In his report, the fiduciary commissioner recommended that an appraisal of all personal property remaining in the home be conducted. Although an appraisal of this property is included in the record, it is not clear who owns the property.

6. Mrs. Kidwell asserts that her husband tried to alienate property to a third person, his nephew, and therefore, her case falls under the equitable distribution statute by virtue of *W.Va.Code,* 48–2–32(h) [1984]. *W.Va.Code,* 48–2–32(h), however, provides, in relevant part, that "[a] husband or wife may alienate property at any time prior *to the entry of an order under the provisions of this article or prior to the recordation of a notice lis pendens in accordance with the provisions of section thirty-five [§ 48–2–35] of this article,* and at anytime and in any manner not otherwise prohibited by an order under this article, in like

manner and with like effect as if this article and the doctrine of equitable distribution had not been adopted[.]" (emphasis added) The articles to which this provision refers address only cases involving divorce, annulment and separate maintenance, not will renunciation cases. Thus, we find this assertion to be without merit.

7. Although the issue was not raised by the parties, we further note that article 3 of chapter 48 of the *Code* regarding the property, rights and liabilities of married women is also not applicable to the facts of the present case.

8. We further note that the appellant asserts that the circuit court ruled that the personal property belonged to Mr. Kidwell based upon the application of a traditional "country law" which attributes ownership of all property to the husband. There is no evidence before this Court that either the fiduciary commissioner or the circuit court relied upon this "country law" in determining that the personal property belonged to Mr. Kidwell. Clearly, there is no

after reviewing numerous judicial decisions and statutes in other jurisdictions, judicially created a claim for equitable distribution of marital property upon divorce to provide the wife with some distribution for her homemaker and economic contributions to the marriage.[9] Mrs. Kidwell urges this Court to create a similar claim in will renunciation cases. However, the case before us is easily distinguishable from *LaRue*. In *LaRue*, there was no statutory provision providing for the equitable distribution of marital property upon divorce, although such statute was later enacted by the legislature subsequent to the issuance of our opinion. Furthermore, there was an abundance of authority from other jurisdictions to support the adoption of the doctrine of equitable distribution. In the present case, there is a specific statutory provision providing for the renunciation of a will by a spouse. Moreover, Mrs. Kidwell has cited no authority to support her assertion that the doctrine of equitable distribution should apply in will renunciation cases. Thus, the statutory provisions enacted by the legislature relating to will renunciation cases must be applied in this case.

The law governing will renunciation cases at the time of Mr. Kidwell's death is set forth, in relevant part, in *W. Va. Code*, 42–3–1 [1923]. Pursuant to this statutory provision, the surviving wife or husband of the testator is allowed to renounce any provision in the testator's will within eight months from the time of the admission of the will to probate. Upon making such renunciation, *W. Va. Code*, 42–3–1 [1923] provides that the

surviving wife or husband shall have such share in the real and personal estate of the decedent as such surviving wife or husband would have taken if the decedent had died intestate leaving children; otherwise the surviving wife or husband shall have no more of the decedent's estate than is given by the will.

The procedure for distributing the personal estate of an intestate is outlined in *W. Va. Code*, 42–2–1 [1923].[10] When the intestate is a married man or woman leaving surviving children, *W. Va. Code*, 42–2–1(a) [1923] provides that the wife or husband is entitled to one-third of the surplus of his or her personal estate after payment of funeral expenses, charges of administration and debts. Thus, when a spouse renounces the testator's will pursuant to *W. Va. Code*, 42–3–1 [1923], he or she would receive one-third of the surplus of the personal estate after the payments of certain expenses in accordance with *W. Va. Code*, 42–2–1 [1923]. Furthermore, upon renouncing the will, a surviving spouse is entitled, under *W. Va. Code*, 43–1–1 [1923],[11] to a one-third dower interest of all of the decedent's real estate, unless lawfully barred or relinquished.

The legislature, no doubt recognizing the inequities which frequently result when a spouse renounces the testator's will or when no provision has been made for the spouse in the will, recently rewrote *W. Va. Code*, 42–3–1 [1992].[12] Pursuant to the

---

"country law" recognized in this jurisdiction which *presumes* that a husband owns all of the parties' property at his death.

9. Equitable distribution of property is a three-step process as we pointed out in syllabus point 1 of *Whiting v. Whiting*, 183 W.Va. 451, 396 S.E.2d 413 (1990). First, the parties' property must be classified as marital or nonmarital. The second step is to value the marital assets. Finally, the third step is to divide the marital assets between the parties in accordance with the provisions of *W. Va. Code*, 48–2–32 [1984].

10. *W. Va. Code*, 42–2–1 [1923] and *W. Va. Code*, 42–2–2 [1923] were repealed by Acts 1992, c. 75.

11. The estates of dower and curtesy under *W. Va. Code*, 43–1–1 [1923] were abolished by the legislature in 1992.

12. The legislature has now essentially adopted the Uniform Probate Code. Although this Court redefined property rights by adopting equitable distribution principles when a marriage ends in divorce, *LaRue v. LaRue*, 172 W.Va. 158, 304 S.E.2d 312 (1983), such redefinition of property rights was not reflected in the West Virginia elective share statute. John W. Fisher, II & Scott A. Curnutte, *Reforming the Law of Intestate Succession and Elective Shares: New Solutions to Age Old Problems*, 93 W.Va.L.Rev. 61, 63–64 (1990). Now, with the adoption of a new elective share statute, a spouse's elective share rights are more fairly apportioned to reflect the length of the marriage and the contributions of the parties.

provisions of *W.Va.Code*, 42–3–1(a) [1992], the surviving spouse now has the "right of election, ..., to take an elective-share amount equal to the value of the elective-share percentage of the augmented estate, determined by the length of time the spouse and the decedent were married to each other[.]" The schedule for the elective-share percentages provided in *W.Va.Code*, 42–3–1 [1992] can be summarized as follows:

| Length of marriage | Elective-share percentage |
|---|---|
| Less than 1 year | Supplemental amount only |
| 1 yr. but less than 2 yrs. | 3% of the augmented estate |
| 2 yrs. but less than 3 yrs. | 6% of the augmented estate |
| 3 yrs. but less than 4 yrs. | 9% of the augmented estate |
| 4 yrs. but less than 5 yrs. | 12% of the augmented estate |
| 5 yrs. but less than 6 yrs. | 15% of the augmented estate |
| 6 yrs. but less than 7 yrs. | 18% of the augmented estate |
| 7 yrs. but less than 8 yrs. | 21% of the augmented estate |
| 8 yrs. but less than 9 yrs. | 24% of the augmented estate |
| 9 yrs. but less than 10 yrs. | 27% of the augmented estate |
| 10 yrs. but less than 11 yrs. | 30% of the augmented estate |
| 11 yrs. but less than 12 yrs. | 34% of the augmented estate |
| 12 yrs. but less than 13 yrs. | 38% of the augmented estate |
| 13 yrs. but less than 14 yrs. | 42% of the augmented estate |
| 14 yrs. but less than 15 yrs. | 46% of the augmented estate |
| 15 yrs. or more | 50% of the augmented estate |

*W.Va.Code*, 42–3–2 [1992] sets forth what the augmented estate comprises.

Clearly, under the new elective share statute, Mrs. Kidwell would receive more upon renouncing her late husband's will than she would receive under the former *W.Va.Code*, 42–3–1 [1923]. However, this statute was not in effect at the time of her husband's death.[13] So, under the former *W.Va.Code*, 42–3–1 [1923], if Mrs. Kidwell renounces the will, she would be entitled to one-third of Mr. Kidwell's personal estate, after the payment of funeral expenses, charges of administration and debts, and a statutory dower interest of one-third of the decedent's real estate. According to calculations made by the executor which appear to be unchallenged, the amount of personal property Mrs. Kidwell would receive if she renounced her husband's will pursuant to *W.Va.Code*, 42–3–1 [1923] would be $14,740.36.[14] The executor's calculations further show that the amount of personal property Mrs. Kidwell would receive under the will would be $24,888.33.[15]

**13.** " ' "A statute is presumed to operate prospectively unless the intent that it shall operate retroactively is clearly expressed by its terms[.]" ' " Syl. pt. 4, in part, *Arnold v. Turek*, 185 W.Va. 400, 407 S.E.2d 706 (1991) (citations omitted). In *Arnold,* while we recognized that this Court has been willing to accord some measure of retroactivity to new amendments working remedial or merely procedural changes to the Workers' Compensation Act, we found that the Wrongful Death Act amendments were "major changes," and that the rights and liabilities of the parties are controlled by the wrongful death statute in effect at the time of the decedent's death. 185 W.Va. at 406, 407 S.E.2d at 712. In the present case, we do not view the changes to *W.Va.Code*, 42–3–1 [1992] to be remedial because the entire statute was materially changed. Furthermore, there is no language in the statute indicating an intent that the statute shall operate retroactively.

**14.** The executor used the following figures as examples:

| | |
|---|---|
| Total personal estate | $57,816.00 |
| Less debts | 2,017.67 |
| Less funeral expenses | 4,797.24 |
| Less monument | 1,000.00 |
| Less 5% Executor commission | 2,890.00 |
| Less 5% Attorney fee (excluding real estate) | 2,890.00 |
| Balance | $44,221.09 |
| One-third of surplus | $14,740.36 |

**15.** The executor gave the following examples to illustrate the amount of personal property Mrs. Kidwell would receive under the will:

Bank checking account .............. $20,539.88

Mrs. Kidwell, however, has also raised the argument that Mr. Kidwell attempted to bequeath more than he owned.[16] As noted above, Mrs. Kidwell testified that her husband owned the property where they lived before they were married, and she does not make any claim regarding his real estate. Mrs. Kidwell's claim relates only to certain personal property bequeathed by Mr. Kidwell under his will.

In the fiduciary commissioner's report, he found that

all personal property appraised in the Estate of Jay L. Kidwell, was his sole and independent property, and Hilda Kidwell [is] entitled to only such amount of personal property as bequeathed to her by the Last Will and Testament of Jay L. Kidwell, which is to say, Hilda Katherine Kidwell would be entitled to all money, checking accounts, savings accounts, certificates of deposit, government bonds and cars.

The fiduciary commissioner further found that "all of his remaining personal property, livestock and farm machinery would be bequeathed unto his nephew, E. Lyle Kidwell[.]" The farm machinery, cattle, livestock and guns were appraised by the executor at a value of $30,910.00. The fiduciary commissioner did not believe Mrs. Kidwell had any interest in the barn because it "was built at a time when Hilda Kidwell was not living on the property, and was built on property which Jay Kidwell owned prior to [the] marriage of the parties, ... and in fact, the barn was built by Jay Kidwell and several of his relatives." [17]

At the time of the fiduciary commissioner's report, however, the personal property

| | |
|---|---|
| U.S. Treasury Bond | 2,621.83 |
| Interest on checking account | 344.29 |
| Motor vehicle | 3,400.00 |
| | $26,906.00 |
| Less amount advanced for Hilda | 2,017.67 |
| Balance | $24,888.33 |

16. It is a generally recognized principle that one can only dispose of, by will, that which he or she owns:

That which one owns he can dispose of by will, and it is immaterial from what source the property was acquired. However, the testator by will can convey only such property as he has, and only such interest as he has in

remaining in the home of the parties had not been appraised. That property was ultimately appraised by the executor at a value of $1,510.50. Mrs. Kidwell testified at the hearing before the commissioner that she believed that property belonged to her. Lyle Kidwell, as executor of the estate, testified that he had not appraised the property in the house because Mrs. Kidwell "said that she'd just keep that there for herself," and that he had no objection to allowing the property to remain in the house. In his report, the fiduciary commissioner recommended "that an appraisal be done of all household goods and property."

In finding that the record fully supported the fiduciary commissioner's findings and conclusions, the circuit court held:

The Estate was appraised and ownership of the property determined based on the actual ownership of interest by the parties in the respective properties and to the exclusion of the Domestic Relation Rules applicable to division of property in Domestic Relation Cases. The Court believes the determination of ownership by the appraisers and Administrator were in all respects proper and that the Findings of the Fiduciary Commissioner and the County Commission should be sustained.

The circuit court further found that "[t]he property within the dwelling was properly held to be that of the Estate and should be appraised as such. The evidence presented is adequate to show ownership in the deceased."

This Court will sustain the findings of the fiduciary commissioner which

property. Thus, in absence of a valid power, he cannot devise or bequeath property to which he has no title. Stated otherwise, a decedent cannot by will pass the title of property which would not pass by descent without a will[.]

94 C.J.S. *Wills* § 76 (1956) (footnotes omitted).

17. We believe the record supports the fiduciary commissioner's finding that Mrs. Kidwell has no interest in the barn. It was constructed by Mr. Kidwell and his relatives, on property which no one disputes Mr. Kidwell owned, during a period of time when Mrs. Kidwell lived apart from her husband.

are affirmed by the circuit court unless such findings are not warranted by any reasonable view of the evidence. We recently stated our scope of review in estate cases in syllabus point 3 of *In re Estate of Foster*, 180 W.Va. 250, 376 S.E.2d 144 (1988):

'The findings of a commissioner in chancery, on questions of fact, should generally be sustained unless not warranted by any reasonable view of the evidence and such findings are entitled to peculiar weight in an appellate court when they have been confirmed by the decree from which an appeal has been granted.' Syl. pt. 1, *Baker v. Hamilton*, 144 W.Va. 575, 109 S.E.2d 27 (1959).

■ It is not clear from the record upon what evidence the fiduciary commissioner relied in determining that the farm equipment was the sole property of the decedent, Mr. Kidwell. It is even more unclear from the record upon what evidence the circuit court relied in determining that the personal property in the house was the sole property of the decedent.

Upon review of the record before us, we do not believe there was sufficient evidence from which to conclude that Mrs. Kidwell is not entitled to any of the personal property in the house, the farm equipment, or the livestock because it is not clear from the record whether Mr. Kidwell was the sole owner of this property or whether Mrs. Kidwell owned or had some interest in it. It is possible that Mrs. Kidwell did have an interest in this personal property because Mr. Kidwell had titled other property in both their names as joint tenants with rights of survivorship. For example, as pointed out by Mrs. Kidwell, the executor of the will initially appraised Mr. Kidwell's truck as belonging to his estate. However, upon examining the title to the truck, it was found that the truck was titled in the name of Mr. and Mrs. Kidwell as joint tenants with rights of survivorship. Although the title to the truck is evidence of Mrs. Kidwell's interest in the truck prior to her husband's death, there is no such evidence in the record regarding the farm

equipment, the livestock, or the personal property in the house. We believe the record is incomplete in that the ownership of the farm equipment, the livestock, and the personal property in the house has not been clearly established. Therefore, we cannot sustain the findings of the fiduciary commissioner or the circuit court with respect to the ownership of the farm equipment, the livestock, and the personal property in the house.

Thus, before any determination can be made as to whether Mrs. Kidwell should accept the benefits under the will or assert a claim against the estate, the ownership of the property in question must be clearly established in the record. Therefore, we find that this case should be remanded so that evidence can be submitted clearly establishing the ownership of the farm equipment, the livestock, and the property located within the house.

### III

For the reasons set forth herein, we conclude that this case should be reversed, in part, and remanded so that evidence can be submitted which clearly establishes the ownership of the farm equipment, the livestock, and the personal property located within the Kidwell house. In all other respects, we affirm the circuit court's order. However, we also hold that, in the event Mrs. Kidwell no longer seeks to renounce her husband's will and desires to take the property as bequeathed to her by her husband, then she should be provided an opportunity to withdraw her renunciation.

Affirmed, in part, reversed, in part, and remanded.