JESSIE EDWARDS, as Administratrix of the Estate of WILLIAM EDWARDS, Deceased, Plaintiff, *v.* RILEY W. SULLIVAN et al., Defendants.

Supreme Court, Special Term, Erie County, April 25, 1949.

*Hugh McM. Russ* and *John E. Dickinson* for Riley W. Sullivan, defendant.

*John E. Leach* for Edward Hayden and another, defendants.

*Edward B. Horning* for plaintiff.

HALPERN, J.   This case presents an interesting conflict of laws question, arising out of the following circumstances:

On February 14, 1947, while the plaintiff's intestate, William Edwards, was crossing Hamburg Turnpike in the city of Lacka-wanna, New York, on foot, he was struck successively by two motor vehicles, one owned and operated by the defendant Sullivan and the other owned by the defendant Cleveland and Buffalo Transit Company and operated by the defendant Edward Hayden.   He died the same day of the injuries which he sustained.

The decedent left him surviving his widow and his mother, both residents of Florida.   On March 29, 1947, his mother, the plaintiff Jessie Edwards, was appointed administratrix of his estate by the Surrogate's Court of Erie County.   Her petition alleged that the decedent had died a resident of Erie County, that his widow had abandoned him and that the petitioner was solely entitled to take as his distributee.

The defendant Sullivan is a resident of the State of Pennsylvania. The defendant Cleveland and Buffalo Transit Company is an Ohio Corporation, maintaining its principal place of business in Ohio, but maintaining a New York State office in the city of Buffalo. The defendant Hayden is a resident of the city of Buffalo.

The plaintiff instituted this action to recover damages for the death of the decedent by service of the summons and complaint in New York State, pursuant to section 52 of the Vehicle and Traffic Law.

The defendants moved to dismiss the complaint under rule 107 of the Rules of Civil Practice upon the ground that '' there is an existing final judgment of a court of competent jurisdiction rendered on the merits, determining the same cause of action between the parties '' and also upon the ground that the claim or demand set forth in the complaint had been released.

The defendants' motion is based upon the following facts: On March 18, 1947, on the petition of the decedent's widow, the County Judge of Duval County, Florida, appointed one Claude Smith, Jr., an attorney of law, administrator of the estate of the decedent, the widow being an infant and ineligible for appointment.

The petition for the appointment of the administrator alleged that the decedent had been a resident of Duval County, Florida, at the time of his death. The petition further alleged that the decedent had left tangible personal property in the State of Florida, consisting of clothing and other paraphernalia and that he had a claim in the amount of $500 against his mother, Jessie Edwards, a resident of the State of Florida.

On June 16, 1947, Claude Smith, Jr., as administrator, brought an action in the Circuit Court in and for Duval County, Florida, against the defendants Sullivan and the Cleveland and Buffalo Transit Company to recover damages for the death of the decedent. The defendants were not available for the service of process in the State of Florida and, so far as appears, they could not have been subjected to the jurisdiction of the Florida court against their will, but they made a voluntary appearance in the Florida action. They filed their answers on June 16, 1947, the day on which the complaint was filed. On the same day, they advised the court that they had reached a settlement of the action and in accordance therewith, the court directed the jury to render a verdict in favor of the plaintiff in the amount of $1,040. Judgment was entered upon this verdict on June 16,

1947, and was promptly satisfied. The widow and the adminis-trator also executed a release releasing the said defendants and also the defendant Edward Hayden from any and all claims of any kind.

It is alleged in the replying affidavits submitted on behalf of the plaintiff that the defendants through their insurance carriers had entered into negotiations with the plaintiff's attorney for the settlement of the case in Buffalo and that while the negotiations were pending, the insurance carriers, upon discovering the existence of the widow in Florida, had their Florida representative enter into an agreement with the widow for the settlement of the case for the sum of $1,000 and in accordance with this agreement, without any notice to. the plaintiff's attorney or to the mother, the defendants caused the administrator to be appointed in Florida and the suit to be brought and the consent judgment to be entered. It is further alleged by the plaintiff that the defendants knew of the plaintiff's claim that the widow had abandoned the decedent, but this is denied by the defendants.

The plaintiff asserts that the allegation in the Florida petition that the decedent was a resident of Florida at the time of his death was false and that his domicile had been changed to Erie County, New York State, long before he died. The plaintiff further claims that the widow had abandoned the decedent and had refused to come to New York State to live with him and was in fact living with some other man in Florida in the relationship of husband and wife at the time of the decedent's death. It is claimed that by reason of the abandonment, the widow is barred from participating in the proceeds of the death action under the provisions of section 133 of the Decedent Estate Law and that the mother is solely entitled to the proceeds of any recovery in the action.

There is no provision in the Florida law barring a wife who has abandoned her husband from participating in his estate or from sharing in the proceeds of an action for his death. However, since the injury causing the death occurred in New York State, the New York statute governs with respect to the distribution of the proceeds of the action. (Restatement, Conflict of Laws, § 393; *Baldwin* v. *Powell*, 294 N. Y. 130.)

Therefore, if it is ultimately found that the widow had abandoned the decedent, she will be barred from participating in the proceeds of the death action and the mother will be solely entitled thereto.

However, the establishment of the abandonment will not of itself entitle the plaintiff to succeed in the present death action in New York State in the face of the settlement of the death claim by the Florida administrator and the judgment obtained and satisfied by him. If the Florida proceedings were valid, the present action is barred, whatever other remedies the mother may have against the Florida administrator or against the defendants.

This action can be maintained only if it is found that the Florida administration proceedings were void for want of jurisdiction.

As has been noted above, the cause of action for wrongfully causing death arose in New York State and is governed by the New York statute. The statute authorizes the maintenance of an action for the wrongful causing of death by " the executor or administrator duly appointed in this state or in any other state ". (Decedent Estate Law, § 130.) The cause of action is vested in the executor or administrator and not in the distributees who are the beneficiaries of the action. The suit must be brought by the executor or administrator as the statutory trustee for the persons who may ultimately be determined to be the beneficiaries. (*Matter of Meng,* 227 N. Y. 264; *Mossip* v. *Clement & Co.,* 256 App. Div. 469, affd. 283 N. Y. 554.)

In this respect, the New York statute differs from the Idaho statute which was before the United States Supreme Court in *Spokane & Inland Empire R. R. Co.* v. *Whitley* (237 U. S. 487). The Idaho statute provided for a suit by the heirs of the deceased or by an administrator authorized by them to bring the action on their behalf. Under this statute, it was held that a judgment in a suit on behalf of the decedent's widow in Washington did not bar a subsequent suit by his mother in Idaho, the mother not having joined in the Washington suit or authorized it to be brought on her behalf. The Supreme Court indicated, however, that if the statute of the State of Idaho had provided for suit by the administrator on behalf of all the beneficiaries, the mother would have been bound by the judgment obtained by the administrator, even though she had not concurred in the action.

The principal question to be decided in this case is whether the Florida administrator was a duly appointed administrator authorized to act as the statutory trustee under the New York statute. This in turn depends upon whether the Florida courts had jurisdiction to appoint an administrator under the cir-

cumstances of this case. Obviously, no person could be a duly appointed administrator within the meaning of the New York statute unless he was appointed by a court which had jurisdiction to appoint him.

The defendants contend that the jurisdiction of the Florida probate court may be upheld on two grounds: first, that the decedent was domiciled in Florida at the time of his death; second, that he left personal property within the State of Florida in need of administration there (Fla. Stat., § 732.06).

Both these allegations of jurisdictional facts are challenged by the plaintiff in the replying affidavits and the questions of fact thus raised must be resolved before the sufficiency of the defendants' defense can be decided.

If it is found that the decedent was domiciled in Florida, the court obviously had jurisdiction to appoint an administrator to bring the death action, regardless of whether the decedent left property there.

The grounding of the jurisdiction of the Florida court solely upon the existence of property within the State is more debatable. The State in which property is left undoubtedly has jurisdiction to appoint an ancillary administrator to administer the property. By the weight of authority, such an administrator has the power to maintain a death action, even though the decedent had not been domiciled in the State and even though the defendants in the death action were not domiciled there. It seems that an ancillary administrator, validly appointed on the ground that there is personal property within the State, is a duly appointed administrator within the meaning of statutes conferring upon such an administrator the right to maintain an action for the wrongful causing of death (*Lang* v. *Houston, West St. and Pavonia Ferry R. R. Co.*, 75 Hun 151, affd. 144 N. Y. 717; *Anderson* v. *Louisville & Nashville R. R. Co.*, 210 F. 689, but see *Baltimore & Ohio R. R. Co.* v. *Evans*, 188 F. 6, contra; 3 Beale on Conflict of Laws, §§ 467.2, 467.6). It seems somewhat illogical to make the validity of the appointment of an administrator to enforce a death claim depend upon the fortuitous circumstance that the nonresident decedent left personal property within the State, but this seems to be the rule supported by the weight of authority (see cases *supra* and *Louisville & Nashville R. R. Co.* v. *Jones' Administrator*, 215 Ky. 774).

The defendants contend that there is no issue of fact with respect to the decedent's having left personal property in the State of Florida but, upon a close reading of the replying affi-

davits, I am satisfied that it was the intention of the plaintiff to put this allegation in issue. The only tangible property alleged to have been left by the defendant in Florida consisted of " personal clothing and paraphernalia ". The replying affidavits allege that the decedent had removed " all his belongings " to the State of New York. This is sufficient to raise a question of fact as to the existence of personal property in Florida at the time of his death.

With respect to the alleged item of intangible property, the claim against Jessie Edwards for money loaned, there is also a question of fact. It is true that intangible property of this character is deemed to be located in the State in which the debtor is domiciled and it is conceded that Jessie Edwards was domiciled in Florida, but it is specifically asserted in the replying affidavits that Jessie Edwards was not indebted to the decedent in any amount and that the money which had been sent to her by the decedent constituted a gift and not a loan.

The death claim itself might be a sufficient basis for the appointment of an administrator in a State in which the alleged wrongdoers were domiciled. While the proceeds of a death action under the New York statute are not technically assets of the estate but are held by the administrator under a statutory trust, there is both statutory and judicial authority for treating the death claim as the property of the estate for the purpose of determining probate court jurisdiction. Under the authorities, an administrator may be appointed in the State in which the wrongdoers are domiciled, even though the decedent was not domiciled in that State and even though he left no property there. (*Van Dusen* v. *Sturm*, 257 App. Div. 914; Surrogate's Ct. Act, §§ 45, 47; *McCarron* v. *New York Central R. R. Co.*, 239 Mass. 64; 3 Beale on Conflict of Laws, § 467.6). However, this theory is not applicable here, since the defendants were concededly not domiciled in the State of Florida.

There is some authority for the proposition that the existence of a wrongful death claim is sufficient to confer jurisdiction to appoint an administrator upon any State in which the wrongdoers are suable or in which they can be subjected to the jurisdiction of the courts, without regard to their domicile (Restatement, Conflict of Laws, § 467; *Matter of Waits*, 23 Cal. 2d 676, and the cases there cited, but see *Louisville & Nashville R. R. Co.* v. *Herb*, 125 Tenn. 408, contra).

It may be noted that the State of Florida has never adopted this theory; there is no provision in the Florida statutes author-

izing its probate courts to appoint an administrator under such circumstances. But even if it were assumed that this theory might be invoked to support the appointment of an administrator in Florida in an appropriate case, it is not applicable here. The defendants could not have been subjected to the jurisdiction of the Florida courts without their consent. They were not available for the personal service of process there, and they had no property there. One of the defendants was a resident of the State of Pennsylvania, the other was an Ohio corporation, doing business in Ohio and New York, but so far as appears, doing no business in the State of Florida. The defendants were not in fact subjected to the jurisdiction of the Florida courts by the service of any process, but they voluntarily appeared in the action.

The jurisdiction of the Florida probate court must therefore rest upon a finding either that the decedent was domiciled in Florida or that he left personal property in the State at the time of his death. As has been pointed out above, there is a triable question of fact in this case as to each of these possible bases of jurisdiction.

The courts of this State are not concluded by the recitals in the Florida decree with respect to the jurisdictional facts. The jurisdictional findings by the Florida court were wholly ex parte and they consisted merely of the court's acceptance of the allegations of fact contained in the widow's petition. Under these circumstances, the courts of this State are free to inquire independently into the existence or nonexistence of the necessary jurisdictional facts.

"The record of judgment rendered in another State may be contradicted as to the facts necessary to give the court jurisdiction; and if it be shown that such facts did not exist the record will be a nullity, notwithstanding it may recite that it did exist." (*Thompson* v. *Whitman*, 18 Wall. [U. S.], 457 [Headnote No. 2].)

"For domicil is the foundation of probate jurisdiction precisely as it is that of divorce. The ruling in *Tilt* v. *Kelsey*, 207 U. S. 43, regarding the probate of a will, is equally applicable to a sister-State divorce decree: ' the full faith and credit due to the proceedings of the New Jersey court do not require that the courts of New York shall be bound by its adjudication on the question of domicil. On the contrary, it is open to the courts of any State in the trial of a collateral issue to determine upon the evidence produced the true domicil of the deceased.' 207 U. S. 43, 53." (*Williams* v. *North Carolina*, 325 U. S. 226, **231.**)

There is a division of authority on the question of whether an order appointing an administrator is subject to collateral attack within the State in which the appointment was made, for jurisdictional defects which do not appear on the face of the order (See cases collected in 49 C. J. S., Judgments, § 421, and 33 C. J. S., Executors and Administrators, § 76).

In New York State, it is well settled that in a death action, the defendant may challenge the validity of the appointment of the administrator in the State of New York, by extrinsic evidence showing that the Surrogate's Court had no jurisdiction to appoint the administrator (*Ziemer* v. *Crucible Steel Co.*, 99 App. Div. 169; *Hoes* v. *New York, New Haven & Hartford R. R. Co.*, 173 N. Y. 435, 441; *Raab* v. *New Yorker Fleet Owners' Assn.*, 268 App. Div. 884).

The rule in Florida is probably to the contrary. It is there held that the validity of a local appointment may not be collaterally attacked within the State for lack of jurisdiction unless the defect appears on the face of the record. (*State ex rel. Campbell* v. *Chapman*, 145 Fla. 647.)

However, even in the States in which this rule prevails as to local decrees, it does not apply to the decrees of another State. (See cases cited in 50 C. J. S., Judgments, § 893, pp. 502–503.) Such decrees are subject to collateral attack, whether the want of jurisdiction appears upon the face of the record or not, in accordance with the general rule that all judgments of foreign States are open to re-examination on jurisdictional grounds (*Scanlon* v. *Kuehn*, 225 App. Div. 256).

The defendants argue that this case involves a double collateral attack or an attack once removed, since the plaintiff, according to the defendants' argument, in order to succeed, must attack not only the appointment of the administrator, but also the judgment of the Florida Circuit Court in the death action. The defendants argue that even if the collateral attack upon the appointment of the administrator were permitted, such attack would be futile, since the judgment of the Circuit Court would stand in any event, that judgment not being subject to any jurisdictional infirmity. This analysis of the problem here presented is not, in my opinion, a sound one. No question of collateral attack upon the judgment of the Circuit Court in the death action is involved here. If it is found that the probate court had no jurisdiction to appoint the administrator, the appointment was wholly void and all proceedings taken by the administrator fall. The judgment obtained by him and the release given by him may simply be disregarded as the

irrelevant acts of a stranger. Obviously, a judgment obtained by a stranger who was never validly appointed the administrator of the decedent's estate cannot bar a death action by the duly appointed administrator.

It is true that, under the conclusion here reached, the defendants may be subjected to double liability, but this is a risk which is inherent in any situation in which a party relies upon an ex parte finding of the necessary jurisdictional facts as the basis for a judgment in one State and then seeks to take advantage of that judgment in another State (*Williams* v. *North Carolina,* 325 U. S. 226, *supra; Worcester Co. Trust Co.* v. *Riley,* 302 U. S. 292).

The defendants could have avoided this risk in this case by seeing to it that the mother was given notice of the Florida proceedings and was given an opportunity to present her version of the facts there, or they could have avoided it by refraining from appearing voluntarily in the Florida action. Instead, the defendants made a surreptitious settlement with the widow without notice to the mother and they voluntarily appeared in Florida in order to consummate the settlement. In fact, the defendants were the moving parties in procuring the appointment of the Florida administrator and in causing the consent judgment to be entered against themselves. Under such circumstances, they can hardly complain if it turns out that the forum which they chose had no jurisdiction over the matter at all and that their maneuver was an ineffectual one. There is no inequity in casting upon the defendants the risk of an adverse determination of the question of Florida jurisdiction, by the courts of this State. "It is apparent that the Railroad Company coöperated with the administratrix in securing the judgment in her favor, without bringing the mother in as a party * * * it preferred to facilitate the administratrix in obtaining the recovery in the absence of the mother and without its being shown that the suit was brought in her interest and with her authority, and the predicament in which it now finds itself is due solely to its own conduct." (*Spokane & Inland Empire R. R. Co.* v. *Whitley,* 237 U. S. 487, 498–499, *supra.*)

There remains for consideration the question of the effect of the release given by the widow of the decedent. Even if it is found that the appointment of the administrator was wholly void and that the release and the satisfaction of judgment given by him are ineffective, the release given by the widow will be effective, if it is found that she did not abandon her husband, since she would be the sole beneficiary under the

death statute in that event. While the statutory cause of action is vested in the administrator and not in the beneficiary, it is the settled rule that a release given by the sole beneficiary or beneficiaries will bar the action (*Doyle* v. *New York, Ontario & Western Ry. Co.*, 66 App. Div. 398; *Rice* v. *Postal Telegraph–Cable Co.*, 174 App. Div. 39, affd. 219 N. Y. 629).

The present action was commenced by the plaintiff after the release had been given by the widow, so that no question arises in this case of the right to attorneys' fees or court costs, similar to the question involved in *Davis* v. *New York Central & H. R. R. R. Co.* (233 N. Y. 242).

The determination of whether the widow is the sole beneficiary depends upon the decision of the abandonment issue. The resolution of that issue is therefore essential for the disposition of the present motion.

It is thus apparent that the sufficiency of the defense set up in the defendants' moving papers depends upon questions of fact which must be resolved by jury trial. An order may be submitted setting down for jury trial the following questions of fact, pursuant to the provisions of rule 108 of the Rules of Civil Practice:

(1) Was the decedent domiciled in Florida at the time of his death?

(2) Did the decedent leave personal property within the State of Florida?

(3) Had the decedent been abandoned by his wife?

The plaintiff must succeed upon the trial on each of these questions of fact in order to sustain the present action.

If the first two questions are answered in the negative and the third question in the affirmative, the plaintiff is entitled to maintain this action and the motion will be denied; otherwise the motion will be granted.

(Addendum, December 13, 1950.)

In accordance with the foregoing decision, the issues of fact were tried by jury before Mr. Justice ALGER A. WILLIAMS. All three questions were answered in the negative.

It has thus been determined that the decedent was not domiciled in Florida at the time of his death and that he did not leave personal property in Florida. The Florida courts therefore had no jurisdiction to appoint an administrator of his estate. However, the jury's negative answer to the third question, determining that the decedent had not been abandoned by his wife, bars the plaintiff from recovering in this action.

The wife was solely entitled to the proceeds of the death action under the New York statute and the mother had no interest therein. The release given by the wife is a complete defense to this action.

The complaint is accordingly dismissed upon the merits.