Bartel v Farrell Lines (2023 NY Slip Op 02057)

Bartel v Farrell Lines

2023 NY Slip Op 02057

Decided on April 20, 2023

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: April 20, 2023

Before: Renwick, A.P.J., Kern, Moulton, Pitt-Burke, JJ. 

Index No. 190083/17 Appeal No. 16595 Case No. 2021-04421 

[*1]Willard E. Bartel et al., Plaintiffs-Respondents,
v
Farrell Lines etc., et al., Defendants-Appellants, John Crane, Inc., Defendant.

Thompson Hine LLP, New York (Anna K. Stark of counsel), and Thompson Hine LLP, Cleveland, OH (Eric S. Daniel of the bar of the State of Ohio, admitted pro hac vice, of counsel), for appellants.
Motley Rice LLC, New York (Meredith Clark of counsel), for respondents.

Order, Supreme Court, New York (Adam Silvera, J.), entered on or about October 18, 2021, which granted plaintiffs' motion to amend their complaint, and denied the cross motion of defendants Farrell Lines, individually and as successor in interest to American Export Isbrandtsen Lines (Farrell-Isbrandtsen) and Keystone Shipping Company for summary judgment dismissing the complaint as against them, affirmed, without costs.
Co-ancillary administrators Willard E. Bartel and David C. Peebles (Bartel and Peebles) commenced this action on behalf of decedent Richard E. Wright alleging claims under the Jones Act (46 USC § 30104, formerly 46 USC § 688) and general maritime law.
As is relevant to this appeal, Supreme Court granted plaintiffs' motion to amend their complaint to substitute decedent's widow, as administrator of decedent's estate, in place of Bartel and Peebles, and to amend the caption accordingly. Supreme Court denied defendants' cross motion to dismiss the action as time-barred.
Raising sophisticated and novel arguments, defendants seek reversal of Supreme Court's order because the co-administrators are not "duly" appointed "personal representatives" under the Jones Act. Bartel and Peebles are not duly appointed personal representatives, defendants argue, because the Ohio probate court that appointed them as co-ancillary administrators of decedent's estate lacked subject matter jurisdiction under an Ohio statute to make that appointment. As a result, defendants conclude that the lawsuit was a "legal nullity" at the outset, and remains so.
Moreover, defendants argue that substitution of the proper party plaintiff after the expiration of the federal limitations period does not save the action from dismissal, despite its timely commencement. Defendants do not dispute that decedent's widow, as administrator of decedent's estate, is properly considered a personal representative under the Jones Act. However, defendants argue that by the time that plaintiffs moved for substitution, the claims were already time-barred. Consequently, they argue that the lawsuit is a "legal nullity" under New York and Ohio law, and that there can be "no relation back for a lawsuit that is a legal nullity."
We disagree, and now affirm.
Facts
Plaintiff-decedent, Richard E. Wright, was a merchant mariner who is alleged to have sailed aboard vessels owned and operated by defendants. Plaintiffs allege that while aboard defendants' vessels, decedent was repeatedly exposed to asbestos and asbestos-containing products which contributed to his development of lung cancer and subsequent death on November 23, 2014.
On May 14, 2015, Bartel and Peebles were appointed as co-ancillary administrators for the Estate of Richard E. Wright by the Probate Court in Cuyahoga County, Ohio. The appointment was based on decedent's Ohio "property," which their application for appointment described as an "undetermined wrongful death action." Wright's widow described that property in her [*2]nomination and consent to the appointment as "limited to whatever settlement or damage awards result from the prosecution of the occupational disease related cause which the estate holds and is entitled to pursue." An application to extend the administration also referred to an "Asbestos-Case Pending."
On March 8, 2017, Bartel and Peebles commenced this action, by filing a summons and verified complaint, as administrators of the Estate of Richard E. Wright. On January 22, 2019, Wright's widow was appointed as the administrator for the Estate of Richard E. Wright by the Campbell County Circuit Court for the Commonwealth of Virginia. By notice of motion dated July 31, 2020, Bartel and Peebles moved, pursuant to CPLR 1021, for an order permitting plaintiffs to, inter alia, substitute Brenda Wright, Executor of the Estate of Richard E. Wright, deceased, as plaintiff, and to amend the caption accordingly. By notice of cross motion dated August 24, 2020, defendants Farrell-Isbrandtsen and Keystone Shipping Company cross moved for summary judgment dismissing the complaint as time-barred.
By order entered October 18, 2021, Supreme Court granted plaintiffs' motion and denied defendants' cross motion.
The Jones Act
The Jones Act is "remedial, for the benefit and protection of seamen who are peculiarly the wards of admiralty" (The Arizona v Anelich, 298 US 110, 123 [1936]). The Act was intended "to enlarge that protection, not to narrow it," and its provisions are "liberally construed to attain that end" (id. at123). Jones Act cases are sui generis because unlike other employees who are injured through their employer's negligence, seamen are protected as "a member of a favored class" (Warner v Goltra, 293 US 155, 162 [1934]). They are "treated in the same manner as courts of equity are accustomed to treat young heirs, dealing with their expectancies, wards with their guardians, and cestuis que trust with their trustees" (Garrett v Moore-McCormack Co., 317 US 239, 246 [1942]).
The Jones Act, by its terms, incorporates the Federal Employers' Liability Act (FELA) (see 46 USC § 30104[a] [the "Laws of the United States regulating recovery for personal injury to, or death of, a railway employee apply to an action under this section"]).[FN1] Thus, FELA precedent applies to Jones Act cases (see Kernan v American Dredging Co., 355 US 426, 439 [1958]).
As is relevant to defendants' arguments, the Jones Act provides that when a seaman dies from an employment injury "the personal representative of the seaman may elect to bring a civil action at law, with the right of trial by jury, against the employer" (46 USC § 30104).
The Jones Act grants a right of action to the personal representative "without other description" (The Pan Two, 26 F Supp 990, 991-992 [Dist Ct Md 1939]).[FN2] The Act does not require that the personal representative be either "a domiciliary or ancillary administrator" (id.). A domiciliary administrator has standing to file a Jones Act or FELA lawsuit [*3]in another state (id.; Briggs v Pa. R.R. Co., 153 F2d 841, 842 [2d Cir 1946]). However, nothing "explicitly clothes a domiciliary administrator with the exclusive right to maintain such an action" because such a requirement is inconsistent with "the remedial nature" of FELA and the "representative character" of such a suit (Anderson v Louisville & N. R.R. Co., 210 F 689, 691, 693-694 [6th Cir 1914] [Tennessee ancillary administrator could bring a FELA lawsuit in Tennessee as the decedent's personal representative]).
Notably, the personal representative's authority under the Jones Act derives from "a federal statutory right and power given to carry out the policy of the federal statutes" and "is not limited to the confines of the State where he was appointed but is co-extensive with general federal jurisdiction" (The Pan Two, 26 F Supp at 993; see also Gillespie v U.S. Steel Corp., 379 US 148, 154 [1964] ["in passing . . . the Jones Act, Congress provided an exclusive right of action for the death of seamen killed in the course of their employment, superseding all state death statutes which might otherwise be applied"]; Briggs, 153 F2d at 842 [the plaintiff's capacity to sue did not depend on state law but "upon a right created by an act of Congress"]). Unlike state probate statutes, which may vary from state to state, the intent of the Jones Act is to promote uniformity (see Lindgren v United States, 281 US 38, 44 [1929] ["[i]t is plain that the Merchant Marine Act is one of general application intended to bring about the uniformity in the exercise of admiralty jurisdiction required by the Constitution, and necessarily supersedes the application of the death statutes of the several States"]).
The personal representative is typically, although not always, the state appointed executor or administrator (see Complaint of Cosmopolitan Ship Co., S.A., 453 F Supp 265, 266 [SD NY 1978] [attorney for the decedent's relatives could pursue a Jones Act case on the condition that a relative receive "some kind of authorization from an Italian court to pursue these actions on behalf of the decedent as his personal representative"]; Feliu v Grace Line, Inc., 97 F Supp 441, 442 [SD NY 1951] [decedent's father, who was appointed administrator of his son's estate under the laws of the Republic of Honduras, did not "lack[ ] capacity to sue in a court of this country without first obtaining ancillary letters of administration here"]). A statutory beneficiary, however, cannot bring a Jones Act case (see Civil v Waterman S.S. Corp., 217 F2d 94, 98 [2d Cir 1954]).[FN3]
The most important factor is that a personal representative receive authority "of some sort from a state"(Briggs, 153 F2d at 842).
The Collateral Attack
Here, Bartel and Peebles received authority from a state: i.e., letters of authority from the Probate Court of Cuyahoga County, Ohio. Despite this authority, defendants contend that the administrators are not "duly" appointed personal representatives under [*4]the Jones Act because the probate court lacked subject matter jurisdiction to appoint them as co-ancillary administrators under Ohio Revised Code § 2129.04 ("[w]hen a nonresident decedent leaves property in Ohio, ancillary administration proceedings may be had upon application of any interested person in any county in Ohio in which is located property of the decedent"]).
The linchpin of defendants' argument is that the non-resident decedent, who did not die in Ohio, owned no Ohio property to support the court's exercise of subject matter jurisdiction under the statute. Defendants argue that the probate application's reference to an "undetermined wrongful death action" and an "occupational disease related cause" cannot be considered Ohio property because decedent "never sailed in Ohio waters" and was "not injured in Ohio," citing to plaintiffs' proposed amended complaint in this action. Relying on that same proposed complaint, defendants further accuse Bartel and Peebles of making "omissions and misstatements" to the Ohio probate court by representing that an undetermined wrongful death action was part of decedent's Ohio estate and that there was an asbestos case pending.
As defendants concede, collateral attacks are generally disfavored except where a court lacks jurisdiction or where jurisdiction is procured by collusion or fraud (see e.g. Matter of Kane, 3 AD2d 337 [3d Dept 1957]: Ziemer v Crucible Steel Co. of Am., 99 AD 169 [1st Dept 1904]; Ohio Pyro, Inc. v Ohio Dept of Commerce, 115 Ohio St 3d 375, 875 NE2d 550 [Sup Ct Ohio 2007]).
In determining the validity of defendants' attack on the Ohio probate court's jurisdiction, we apply the law of Ohio (Restatement [Second] of Conflict of Laws § 97 ["the local law of the State where the judgment was rendered determines, subject to constitutional limitations, whether the parties are precluded from collaterally attacking the judgment on the ground that the court had no jurisdiction over the thing or status involved or lacked competence over the subject matter of the controversy"]; see also id. at § 105 ["[w]hen recognition or enforcement of a judgment rendered in one state is resisted in a second state on the ground of the alleged incompetence of the court to render the judgment, the statutes and decisions of the courts in the state in which the judgment was rendered are controlling"]).
Where an Ohio probate court's subject matter jurisdiction is questioned and "the record shows nothing to the contrary, it will be conclusively presumed, in collateral inquiries, that the final order was made upon a proper showing, by the proofs, of all the facts necessary to authorize it" (Shroyer v Richmond, 16 Ohio St 455, 466 [Sup Ct Ohio 1866]; see also Hoffman v Fleming, 66 Ohio St 143, 156, 64 NE 63 [Sup Ct Ohio 1902]; Antram v Ten Eck, 1892 WL 358, 1892 Ohio Misc LEXIS 186 [Ct Common Pleas, Miami County 1892]).[FN4] Thus, "in harmony with the weight of authority elsewhere the Ohio courts have held that a decree [*5]of the Probate Court appointing an administrator cannot be collaterally attacked where no jurisdictional defect appears on the face of the proceedings" (Glenn v Trans World Airlines, Inc., 210 F Supp 31, 34 n 1 [ED NY 1962] [unsuccessful collateral attack on a Probate Court of Cuyahoga County appointment]; see also Collateral Attack Upon the Decree of a Probate Court, 22 Harv L Rev 442 [1909] ["[n]or can the lack of assets within a county be a ground for a collateral attack in the absence of its disclosure on the record"]). Of course, this standard is sensible because collateral attacks based on a lack of subject matter jurisdiction can be raised at any time, which runs counter to the policy underlying the finality of judgments.
Here, no jurisdictional defect appears on the face of the probate record. Consequently, we must presume that the Ohio probate court had subject matter jurisdiction to appoint Bartel and Peebles. While defendants assert that decedent never sailed in Ohio waters and was never injured in Ohio, they support this argument by improperly relying on plaintiffs' proposed amended verified complaint, which was never part of the probate proceeding five years earlier. Nor is it apparent based on the face of the probate court record that Bartel and Peebles secured subject matter jurisdiction by collusion or fraud.
The dissent does not dispute that the Ohio probate court possessed the subject matter jurisdiction to appoint Bartel and Peebles. Rather, the dissent posits that the instant action should have been dismissed because, assuming that Bartel and Peebles were "duly" appointed ancillary administrators of decedent's estate, Ohio law limits their authority to administering decedent's Ohio property in Ohio courts, and therefore, Bartel and Peebles lacked standing to bring an action in New York. Notably, the dissent cites no Jones Act or FELA case to support this unduly constrained position.
The dissent's extra-territorial concern is misplaced in a Jones Act case. At common law, an administrator appointed in the decedent's state of domicile had "no power beyond the limits of that State" and could not maintain suit in another state court (Johnson v Powers, 139 US 156, 158 [1891]). This is because a judgment "in rem binds only the property within the control of the court which rendered it" (id. at 159). However, this state jurisdictional limitation does not apply to a Jones Act case (see The Pan Two, 26 F Supp at 991).
In The Pan Two, the Court rejected the ship owner's argument that an Ohio administrator could not bring a Jones Act lawsuit in Maryland based on "the familiar principle that ordinarily an executor or administrator has no extra-territorial powers beyond the State where he is appointed, and therefore may not maintain suits in the courts of other States or of the United States outside of that jurisdiction" (id. at 991). The Court reasoned that this limiting principle has "no proper application to the particular case because [*6]the administrator is here suing not as a common law administrator for the purpose of collecting and distributing assets of the decedent, but in the capacity of a trustee for a preferred class of relatives" (id.). Thus, because a personal representative's authority under the Jones Act derives from a federal statutory right to carry out federal policy, jurisdiction "is not limited to the confines of the State where he was appointed but is co-extensive with general federal jurisdiction" (id. at 993).
There is no reason to decide this appeal differently merely because the territorial limitation here is imposed by a particular state's statute as opposed to a state territorial limitation imposed by common law. As previously discussed, the Jones Act is a remedial statute, and must be interpreted liberally. The Jones Act is also intended to bring about uniformity in the exercise of jurisdiction, and therefore cannot turn on a jurisdictional limit imposed by a particular state's statute (see Lindgren,281 US at 44). The term personal representative should also be broadly construed given the representational character of a Jones Act or FELA representative who, by definition, sues in the capacity of trustee for statutory beneficiaries, not for the benefit of the decedent's estate (see id.; Chicago, B. & Q. R.R. Co. v Wells-Dickey Trust Co., 275 US 161, 163 [1927]).
The dissent, relying on Kyes v Pa. R.R. Co. (158 Ohio St 362, 109 NE2d 503 [Ohio 1952]), overlooks the importance of the representational nature of a Jones Act personal representative, mistakenly believing that Bartels and Peebles had to be "designated statutory trustees" or have that status "given to them." Kyes involves an inapposite state wrongful death statute, and in any event, does not stand for that proposition. To the contrary, Kyes held that the proper party plaintiff was correctly substituted after the expiration of the state statute of limitations because the Ohio wrongful death statute at issue had to be liberally construed to promote justice and because the term personal representative should be broadly defined given that under the Ohio statute, "the plaintiff is not the real party in interest but acts merely as a nominal or formal party or statutory trustee for the statutory beneficiaries who are the real parties" (id. at 364-365).[FN5]
Even if, as the dissent posits, plaintiffs can only bring the instant lawsuit as a domiciliary administrator, Ohio Revised Code § 2129.11 provides the necessary foundation. The statute states that "[i]f no domiciliary administration has been commenced, the ancillary administrator shall proceed with the administration in this state as though the decedent had been a resident of this state at the time of the decedent's death." Because no domiciliary administration had already been commenced, plaintiffs' administration is treated "as though the decedent had been a resident of this state," i.e. treated as a domiciliary administration (see Restatement First[*7], Conflict of Law § 486 ["[t]he term 'domiciliary administration' refers to administration proceedings in the state in which the decedent had his last domicile, and a 'domiciliary administrator' is the administrator appointed there"]). Although Ohio Revised Code § 2129.11 provides that it is confined to administration "in this state," that limitation does not create an impediment in a Jones Act case (see The Pan Two, 26 F Supp at 993 [domiciliary administrator can sue outside the state of decedent's domicile]).
Timeliness of Substitution
Supreme Court correctly granted plaintiffs' motion for substitution of decedent's widow in place of Bartel and Peebles pursuant to CPLR 1021. A motion for substitution can be made by the successors or representatives of a party, so long as the motion is made within a reasonable time (CPLR 1021). Defendants do not dispute that Bartel and Peebles moved for substitution within a reasonable time after the widow's appointment as administrator by the Campbell County Circuit Court for the Commonwealth of Virginia. They do not dispute that Bartel and Peebles were appointed as ancillary administrators of decedent's estate or that the substitute widow is a proper party plaintiff. They do not argue that substitution of the widow changed the nature of the claims and relief sought nor do they allege any prejudice. Instead, they argue, inter alia, that Bartel and Peebles were never duly appointed as decedent's personal representative with authority to file the underlying lawsuit, rendering it a nullity and outside of the statute of limitations. However, for the reasons previously discussed, defendants failed to establish that Bartel and Peebles did not have the capacity to file the instant action. Consequently, Supreme Court correctly granted plaintiffs' motion for substitution of decedent's widow pursuant to CPLR 1021 (see Finamore v David Ullman, P.C., 179 AD3d 642, 644 [2d Dept 2020]).
Even if Bartel and Peebles lacked capacity to bring the instant action, Supreme Court correctly granted plaintiffs' motion for substitution and denied defendants' cross motion to dismiss the action. According to defendants, substitution of the proper party plaintiff after the expiration of the federal limitations period does not save the action from dismissal, despite its timely commencement. Both below and on appeal, defendants maintain that substitution of "a proper administrator" after the expiration of the federal limitations period cannot save the action for two reasons. First, defendants argue that by the time that plaintiffs moved for substitution the claims were already time-barred. Second, they argue that the lawsuit was a "legal nullity" under New York and Ohio law, and that there is "no relation back for a lawsuit that is a legal nullity," citing, among other cases, Edwards v Sullivan (200 Misc 488, 496-97 [Sup Ct, Erie County 1949]), Truty v Federal Bakers Supply Corp. (217 AD2d 951, 952 [4th Dept 1995]), and Black v Aristech Chem[*8]. Co. (2008-Ohio-7038 [4th App Dist, Scioto County 2008]).
Notably, defendants fail to cite a single Jones Act or FELA case to support dismissal of causes of action that have a federal statute of limitations. Rather, to meet their prima facie burden of proof on summary judgment to demonstrate that the action was untimely, they inexplicably base their arguments on state law. By contrast, defendants are quick to cite to federal law to support their position that, contrary to plaintiffs' argument, New York's saving statute CPLR 205(a) is "not applicable to Jones Act or federal maritime cases" and has "no application to causes of action with federal statutes of limitations." Plaintiffs similarly fail to discuss the application of federal law to the issues that are squarely before us.
Defendants have raised the issue of timeliness, but neither party has cited apposite case law. In this posture, we are not bound by the parties' omissions (see Amanda Frost, The Limits of Advocacy, 59 Duke LJ 447, 472 [2009] ["[w]hen the parties fail to fully and accurately describe applicable legal standards, the norm against judicial issue creation comes into conflict with the judiciary's law pronouncement power. . . If litigants could constrain courts through their own truncated or inaccurate depictions of the meaning of statutes, constitutional provisions, and the like, they could effectively wrest this task away from the courts"]; see also Joseph R. Pope, Snyder v Phelps: Issue Waiver and the Scope of Appellate Discretion [The Appeal, Summer 2010 at 5] ["where the parties fail to accurately and completely describe applicable legal doctrine . . . the court's duty to follow the party presentation principle collides with its duty to announce an accurate uncolored rule of law. Indeed, as judicial decisions are objective statements describing the meaning of law . . . courts must be able to sua sponte take notice of issues and legal principles either mistakenly or intentionally omitted by the parties"]).
"We are here concerned with a statute of the United States, and the Federal courts are entitled to determine the nature of the right and the parties who, from time to time, may institute an action or enforce the right" (McCarthy v New York Cent. R.R. Co., 247 AD 50, 52 [1st Dept 1936] [motion court erred in denying the plaintiff's motion to amend her FELA complaint to reflect her capacity as the decedent's administratrix where she erroneously brought the action as administratrix prior to her actual appointment]).
The relevant federal precedent compels affirmance of the motion court. In a seminal case, which was not cited by the parties, the United States Supreme Court held that the plaintiff could amend her FELA complaint to reflect her capacity as administratrix after expiration of the federal limitations period where she improperly commenced the action in her individual capacity (see Missouri, K. & T. R.R. Co. v Wulf, 226 US 570, 576 [1913]). The United States Supreme [*9]Court noted that "aside from the capacity in which the plaintiff assumed to bring her action, there is no substantial difference between the original and amended petitions" which neither modified nor enlarged the facts nor introduced different causes of action (id. at 575-576). Thus, as the change was "in form rather than in substance," the Court found that substitution of the proper party plaintiff "related back to the beginning of the suit" (id. at 576).
Here, although Bartel and Peebles allegedly commenced the action without capacity, and in Wulf the decedent's widow improperly commenced the action in her individual capacity, the distinction is one without a difference. The requirement that a personal representative commence a Jones Act action "is not for the purpose of assuring that the proper party be before the court, but rather to assure all beneficiaries and heirs access to whatever funds might result from the litigation and to guarantee that the railroad will not be subject to multiple recoveries" (Tindall v Union Pac. R.R. Co., 2017 WL 4155428, *3, 2017 US Dist LEXIS 151634, *8, [CD Ill 2017]). Supreme Court's substitution of a proper party plaintiff satisfies these concerns. Wulf is also controlling precedent in Jones Act and FELA cases brought in state court(see Stolz v New York Cent. R.R. Co., 7 NY2d 269 [1959]; McCarthy, 247 AD at 52). Although the parties did not cite Stolz,the case merits discussion. In Stolz, the employer attacked the plaintiff's Surrogate Court's appointment based on a lack of subject matter jurisdiction and sought dismissal of two consolidated FELA actions as time-barred (see Stolz v New York Cent. R.R. Co., 6 AD2d 643, 644-645 [3d Dept 1958], revd 7 NY2d 269 [1959]). The motion court agreed that the Surrogate Court lacked subject matter jurisdiction to appoint the plaintiff as administratrix because her marriage to the decedent was "null and void" (id. at 645). Accordingly, the motion court dismissed the actions and entered judgment dismissing the complaints. The motion court also denied the plaintiff's subsequent motion to amend the order and judgment dismissing the complaints until such time that another personal representative could be substituted (id. at 646).
The Appellate Division affirmed. It agreed that the Surrogate Court lacked subject matter jurisdiction based on the plaintiff's fraud or collusion in obtaining jurisdiction by misrepresenting the legality of her marriage, whether she did so intentionally or not (id. at 646). The Appellate Division also found that the motion court properly denied the plaintiff's motion to amend the order and judgment dismissing the complaints "because since the appointment of the plaintiff as administratrix was void the action abated and no substitution could be made in that action" (id.).
The Court of Appeals reversed and remitted the actions to the motion court for further proceedings consistent with the opinion (7 NY2d at 276).[FN6] Dismissal of the lawsuit was error[*10], the Court of Appeals held, because the action "is dictated by the intrinsic character of the action here involved and by Federal precedent in related situations under the F.E.L.A." (id. at 275). In a FELA lawsuit, the Court noted, the plaintiff is "a mere nominal party" who sues as the statutory trustee on behalf of designated beneficiaries (id. at 274). Thus, the Court reasoned that if the plaintiff was not the lawful widow, then a dismissal would not prejudice her but would "prejudice the rights of the ultimate beneficiaries and promote a windfall for defendant railroad" (id.). The Court of Appeals also relied on United States Supreme Court decisions, including Wulf, highlighting that the United States Supreme Court "has by its decisions approved substitution of a legal representative as the proper party plaintiff even after the limitation period prescribed by the F.E.L.A., thus preserving timely brought actions" (id. at 275-276).
Accordingly, even if the Ohio probate court lacked subject matter jurisdiction, we must affirm Supreme Court's order. We disagree with the dissent's position that we are constrained to reverse Supreme Court and adopt defendants' flawed arguments. "The party presentation principle is supple, not ironclad" (United States v Sineneng-Smith, __ US ___, 140 S Ct 1575, 1579 [2020]). Misicki v Caradonna (12 NY3d 511 [2009]), cited by the dissent, does not hold otherwise. In Misicki, the Court of Appeals reversed the dismissal of the plaintiff's then sole remaining Labor Law § 241(6) cause of action premised on a violation of Industrial Code (12 NYCRR) 23-9.2(a), reasoning that Industrial Code 23-9.2(a) included specific and concrete safety standards that would support a Labor Law § 241(6) claim (id. at 520-521). The majority and dissenting Judge Graffeo criticized Judge Smith's dissent, which advocated for the dismissal of the plaintiff's remaining cause of action based on an argument that the defendant never made below or on appeal — i.e., that Industrial Code 23-9.2(a) was inapplicable for the separate reason that it did not apply to the tool at issue. To avoid deciding the appeal based on an argument that the defendant did not make, the majority assumed, without deciding, that Industrial Code 23-9.2 (a) applied to the tool at issue, stressing that the decision did not "foreclose" the defendant from subsequently raising Judge Smith's argument at trial (id. at 519).
By contrast, here, defendants argued both below and on appeal that Supreme Court erred in declining to grant their cross motion for summary judgment based on inapposite state law, while ignoring the relevant federal precedent. Misicki notes that "[w]e are not in the business of blindsiding litigants" (Misicki, 12 NY3d at 519). However, we are also not in the business of turning a blind eye to our obligation to make the correct legal pronouncement. If we were compelled to adopt defendants' flawed timeliness arguments based on inapposite state law merely because [*11]neither side pointed out that federal law governs, then the issue would be foreclosed, and defendants would have successfully usurped our legal pronouncement power. In sum, application of the relevant precedent dictates that where a Jones Act action is timely brought, a motion for substitution of the proper party plaintiff made after expiration of the federal limitations period must be granted to preserve the rights of the statutory beneficiaries and to prevent a windfall to the employer.
All concur except Kern, J. who dissents in a memorandum as follows:

KERN, J. (dissenting)
 

The complaint should be dismissed on the ground that plaintiffs lacked standing to bring the instant wrongful death lawsuit in New York. The majority takes the position that we cannot challenge the jurisdiction of the Ohio probate court to appoint plaintiffs as ancillary administrators of the decedent's estate. However, we need not challenge the Ohio probate court's jurisdiction to appoint plaintiffs as ancillary administrators to decide this appeal. Whether plaintiffs were properly appointed as ancillary administrators is irrelevant to the determination we are being asked to make on this appeal - whether plaintiffs had standing to bring the instant wrongful death lawsuit in New York based on decedent sailing in New York waters and calling on New York ports. If plaintiffs were not duly appointed ancillary administrators of the decedent's estate, they would have no authority to bring this action in New York. Assuming plaintiffs were duly appointed ancillary administrators of the decedent's estate, their authority was limited to administering the estate in Ohio. Therefore, plaintiffs lacked standing to bring this lawsuit in New York.
Initially, plaintiffs lacked standing to file this lawsuit in New York because they were not the decedent's "personal representative[s]" under 45 USC § 59 (the Jones Act). Pursuant to the Jones Act, "[a]ny right of action given by this chapter to a person suffering injury shall survive to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee." A personal representative under the Jones Act may bring an action in a state other than the one in which they were appointed (see The Pan Two, 26 F Supp 990, 993-994 [D Md 1939]). The term "personal representative" is not defined in the Jones Act and it is not clearly or uniformly defined by the caselaw. However, the law is clear that the most important factor in determining whether someone is a personal representative under the Jones Act is whether that person has received authority "of some sort from a state" (Briggs v Pennsylvania R. Co., 153 F2d 841, 842 [2d Cir 1946]).
In the present case, plaintiffs were appointed ancillary administrators by the Ohio probate court. However, under Ohio law, ancillary administrators are not personal representatives with authority under the Jones Act to bring a lawsuit in another state. To the [*12]contrary, Ohio law unambiguously limits ancillary administrators to administering a decedent's Ohio property in Ohio (see Ohio Rev Code Ann 2129.04 ["[w]hen a nonresident decedent leaves property in Ohio, ancillary administration proceedings may be had upon application of any interested person in any county in Ohio in which is located property of the decedent . . . . The ancillary administration first granted shall extend to all the estate of the deceased within the state, and shall exclude the jurisdiction of any other court"]; State ex rel. Lee v Trumbull County Probate Ct., 83 Ohio St 3d 369, 373, 700 NE2d 4, 8 [1998] ["[Ohio Rev Code Ann] 2129.04 provides that probate court jurisdiction in ancillary administration proceedings of nonresident decedents extends only to Ohio property . . . ."]; In re Kelley's Estate: Peters v Ernest, 68 Ohio App 51, 57, 34 NE2d 34, 38 [Ohio Ct App 1940] [holding that "the administration of the ancillary estate is concerned solely with the real and personal property of the decedent, located within the territorial limits of the state in which ancillary administration is granted"]). Given this limitation, plaintiffs, who were appointed ancillary administrators of decedent's estate in Ohio, could not serve as decedent's personal representatives with authority to bring this wrongful death lawsuit in New York under the Jones Act.
Plaintiffs concede for the first time on this appeal that they did not have standing as ancillary administrators to bring the instant wrongful death lawsuit in New York. Instead, they argue that they were also domiciliary administrators of decedent's estate pursuant to Ohio Rev Code Ann (ORC) § 2129.11, which gave them standing to bring this action. It is undisputed that domiciliary administrators have standing to file a lawsuit on behalf of a decedent in another state and may therefore serve as personal representatives under the Jones Act (see Feliu v Grace Line, Inc., 97 F Supp 441, 442 [SD NY 1951][citing Briggs, 153 F2d at 841]). However, plaintiffs' assertion that they became domiciliary administrators pursuant to ORC § 2129.11 is without merit. ORC § 2129.11 states, "if no domiciliary administration has been commenced, the ancillary administrator shall proceed with the administration in this state as though the decedent had been a resident of this state at the time of the decedent's death" (emphasis added). ORC § 2129.11 unambiguously limits an ancillary administrator to administering a decedent's estate in the state of Ohio. This is consistent with the limitation imposed on ancillary administrators by ORC § 2129.04, that the administration of a decedent's estate involve only Ohio property in Ohio courts. Therefore, based on the clear limitation imposed by Ohio law, plaintiffs never became domiciliary administrators and thus, were not decedent's personal representatives with authority under the Jones Act to bring the instant wrongful death lawsuit in New York.
Further, contrary to plaintiffs' [*13]assertion, they also lacked standing to bring this lawsuit as statutory trustees under the Jones Act. While plaintiffs are correct that the trustee or personal representative "acts merely as a nominal or formal party ... for the statutory beneficiaries who are the real parties," that nominal party must still have such a status given to them (Kyes v Pa. R. Co., 158 Ohio St 362, 364, 109 NE2d 503 [Ohio 1952]). As plaintiffs were never designated statutory trustees, they cannot rely on this ground to bring suit under the Jones Act.
The majority's reliance on The Pan Two for the proposition that jurisdictional limitations imposed by state law do not apply in Jones Act cases is misplaced. As the majority states, The Pan Two merely held that a personal representative's authority to bring suit under the Jones Act "is not limited to the confines of the State where he was appointed but is co-extensive with general federal jurisdiction" (26 F Supp at 991, 993). However, The Pan Two case did not involve an administrator whose authority was specifically limited by the statute pursuant to which he was appointed to administering property located in Ohio in the Ohio courts. Here, as plaintiffs' powers as ancillary administrators were specifically limited by Ohio statute to administering property located in Ohio and the statute specifically excluded the jurisdiction of courts outside of Ohio,they were not personal representatives under the Jones Act. Thus,theholding of The Pan Two is inapplicable.
As plaintiffs lacked standing to bring this lawsuit in New York, CPLR 1021 does not allow the substitution of decedent's widow in place of plaintiffs (see Finamore v David Ullman, P.C. 179 AD3d 642, 644 [2d Dept 2020][holding that pursuant to CPLR 1021, substitution is proper "provided that the plaintiff actually had the capacity to sue prior to the expiration of the statute of limitations"][emphasis added]).
Moreover, plaintiffs' assertion that even if they lacked standing to bring this lawsuit, they should be permitted to substitute the proper administrator of the estate, is without merit. In support of this argument, plaintiffs rely only on the savings clause of CPLR 205(a), which would permit recommencement of this action by decedent's widow within six months of dismissal, notwithstanding the statute of limitations. However, CPLR 205(a) does not apply to extend Federal statutes of limitations (see Maurizio v Goldsmith, 84 F Supp 2d 455, 463 [SD NY 2000][holding that CPLR 205(a) does not toll federal statute of limitations], affd 230 F3d 518 [2d Cir 2000]).
In holding that plaintiffs should be permitted to substitute the proper administrator of decedent's estate even if they did not have standing to bring this lawsuit, the majority relies on federal case law, which, it suggests, allows a plaintiff to substitute a proper party plaintiff despite lack of standing even after the expiration of the federal statute of limitations. However, this reliance is improper [*14]because plaintiffs did not advance the argument either before the motion court or on appeal, and it is not the function of this Court to make its own arguments in place of those made by the parties (see Misicki v Caradonna, 12 NY3d 511, 519 [2009]["We are not in the business of blindsiding litigants, who expect us to decide their appeals on rationales advanced by the parties, not arguments their adversaries never made."]). Furthermore, even if "we are not bound by the parties' omissions," as the majority claims, the parties in this case had the opportunity to make arguments regarding the issue of whether the proper plaintiff may be substituted in the absence of standing and after the expiration of the statute of limitations. In support of their argument that substitution should be permitted, plaintiffs chose to rely solely on the savings clause of CPLR 205(a). That plaintiffs' argument is unavailing is not a basis for us to substitute our own reasoning to find in their favor.
Based on the foregoing, I would deny plaintiffs' motion for substitution and grant defendants' motion for summary judgment dismissing the complaint.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: April 20, 2023

Footnotes

Footnote 1:FELA is codified in 45 USC §§ 51-60.

Footnote 2:Like the Jones Act, FELA permits a "personal representative" to file a wrongful death claim and does not define this term (see 45 USC §§ 51, 59; Anderson v Louisville & N. R.R. Co., 210 F 689, 691 [6th Cir 1914] [FELA "employs the generic term 'personal representative,' and so describes a familiar class that would naturally include members that are ordinarily appointed in outside jurisdictions for legitimate objects of administration"]). 

Footnote 3:In cases of wrongful death, the statutory beneficiary is not the decedent's estate. Rather, the beneficiary is "the surviving widow or husband and children of such employee; and, if none, then of such employee's parents and, if none, then of the next of kin dependent upon such employee" (45 USC § 59).
Footnote 4:New York also presumes the existence of jurisdiction in the face of a collateral attack absent fraud or collusion (see Maurer v Johns-Manville, Inc., 126 AD2d 524, 525 [2d Dept 1987] ["[p]ursuant to SCPA 204, when the jurisdiction of a court is called into question in a collateral proceeding, the jurisdiction is presumptively, and in the absence of fraud or collusion, conclusively established by an allegation of the jurisdictional facts contained in a verified pleading"]).

Footnote 5:Contrary to the dissent's position, plaintiffs never conceded that they did not have standing as ancillary administrators to bring the instant lawsuit in New York. Admittedly, one portion of plaintiffs' opposition brief states that plaintiffs must be recognized as a domiciliary administrator to file in a state other than that of the decedent's domicile but argues that plaintiffs achieved that status under Ohio Revised Code § 2129.11. By contrast, another portion of plaintiffs' opposition brief argues that, regardless of whether they were ancillary or domiciliary administrators, plaintiffs were permitted to sue in New York as "statutory trustees."

Footnote 6:The Court of Appeals faulted the motion court for not suspending the litigation in favor of an application to the Surrogate by the plaintiff or any other interested person to preserve the rights of the FELA beneficiaries (Stolz, 7 NY2d at 274). The Court also faulted the motion court for not recognizing that the Surrogate's Court could have permitted the plaintiff to proceed with the litigation based on her limited (albeit questionable) letters of appointment (id.).